**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HAZIM NADA and LORD ENERGY SA**, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-00206-ABJ |
| **UNITED ARAB EMIRATES, ARIAF STUDIES AND RESEARCH LLC, THE ABU DHABI NATIONAL OIL COMPANY, MOHAMED BIN ZAYED AL NAHYAN, MATAR HUMAID AL-NEYADI ALP SERVICES SA, MARIO BRERO, LIONEL BADAL, MURIEL CAVIN, LORENZO VIDINO, SYLVAIN BESSON, and JOHN DOE NOS. 1-25,** | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE ABU DHABI NATIONAL OIL COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PLAINTIFFS' FACTUAL ALLEGATIONS ........................................................................... 2

I.   ADNOC IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN
     IMMUNITIES ACT ....................................................................................................... 5

     A.   The Suit Does Not Satisfy The First Two Prongs Of The Commercial-
          Activity Exception Because The Claims Are Not Based Upon ADNOC's
          Conduct In The United States ............................................................................. 6

     B.   The Suit Does Not Meet The Third Prong Of The Commercial-Activity
          Exception Because It Is Not Based Upon Any Act By ADNOC Abroad
          And Fails To Allege Any Direct Effects In The United States............................. 7

     C.   Conduct By Other Defendants Is Not Attributable To ADNOC ............................ 9

II.  THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ADNOC ........ 11

     A.   ADNOC Lacks Minimum Contacts With The United States ................................ 12

     B.   Exercising Personal Jurisdiction Would Be Unfair And Unreasonable ................ 14

III. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF ................................. 14

     A.   Plaintiffs' Sherman Act Claims Fail For Lack Of Subject Matter
          Jurisdiction And Fail To State Claims ................................................................ 15

          1.   The Court Lacks Subject Matter Jurisdiction Under The Foreign
               Trade Antitrust Improvement Act ................................................................ 15

          2.   Plaintiffs Fail To State A Claim Under The Sherman Act ......................... 16

          3.   Plaintiffs' Sherman Act Claims Are Time-Barred..................................... 17

     B.   Plaintiffs Fail To State A Claim Under The Lanham Act ..................................... 18

          1.   The Alleged Speech Is Non-Commercial .................................................... 18

          2.   The Alleged Speech Is Not Advertising Or Promotion ............................. 18

          3.   Plaintiffs' Claim Seeks An Impermissible Extraterritorial
               Application Of The Lanham Act .................................................................. 19

     C.   Plaintiffs Fail To State A RICO Conspiracy Claim Against ADNOC .................. 19

          1.   The Complaint Fails To Allege ADNOC's Agreement To The
               Commission Of A Substantive RICO Offense ........................................... 19

          2.   Plaintiffs' RICO Claims Are Time-Barred ................................................ 20

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023) ........................................................................................................... 19

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) .................................................................................................. 8

*Allen v. Russian Fed'n*,
  522 F. Supp. 2d 167 (D.D.C. 2007) ..................................................................................... 10

*Andrx Pharm., Inc. v. Biovail Corp. Int'l*,
  256 F.3d 799 (D.C. Cir. 2001) ............................................................................................. 16

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*,
  600 F.3d 171 (2d Cir. 2010) .................................................................................................. 7

*Arch Trading Corp. v. Republic of Ecuador*,
  839 F.3d 193 (2d Cir. 2016) ................................................................................................. 10

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) .............................................................................................................. 5

*Arriba Ltd. v. Petroleos Mexicanos*,
  962 F.2d 528 (5th Cir. 1992) ............................................................................................... 10

*Asa Accugrade, Inc. v. Am. Numismatic Ass'n*,
  370 F. Supp. 2d 213 (D.D.C. 2005) ................................................................................ 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .............................................................................................................. 4

*Atherton v. D.C. Off. Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) .............................................................................................. 4

*Bauman v. Butowsky*,
  377 F. Supp. 3d 1 (D.D.C. 2019) .............................................................................. 3, 11, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 4, 17

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................11, 14

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) ......................................................................................4

*Byrne v. Brock*,
    2020 WL 1487757 (D.C. Cir. Feb. 27, 2020) ..............................................................19

*Ctr. for Immigr. Stud. v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) .............................................................................19

*Cheeks v. Fort Myer Constr. Corp.*,
    216 F. Supp. 3d 146 (D.D.C. 2016) .............................................................................20

*Cockrum v. Donald J. Trump for President, Inc.*,
    319 F. Supp. 3d 158 (D.D.C. 2018) .............................................................................13

*Common Purpose USA, Inc. v. Obama*,
    227 F. Supp. 3d 21 (D.D.C. 2016) ................................................................................3

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .....................................................................................................11

*Doe v. Holy See*,
    557 F.3d 1066 (9th Cir. 2009) ......................................................................................10

*Douglas v. Hirshon*,
    63 F.4th 49 (1st Cir. 2023) ...........................................................................................20

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
    797 F.3d 1248 (11th Cir. 2015) ....................................................................................17

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) .....................................................................................................15

*Farah v. Esquire Mag.*,
    736 F.3d 528 (D.C. Cir. 2013) .....................................................................................18

*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
    873 F. Supp. 2d 288 (D.D.C. 2012) .............................................................................20

* *First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ..................................................................................................9, 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ........................................................................................ 11

\* *Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
   905 F.2d 438 (D.C. Cir. 1990) ...................................................................... 9, 10

*Freedom Watch, Inc. v. Google, Inc.*,
   368 F. Supp. 3d 30 (D.D.C. 2019) .................................................................. 17

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ...................................................................... 3

\* *GSS Group Ltd v. National Port Auth.*,
   680 F.3d 805 (D.C. Cir. 2012) ...................................................................... 11, 12

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ........................................................................................ 11

*Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*,
   623 F. Supp. 3d 857 (N.D. Ill. 2022) .............................................................. 17

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   452 F. Supp. 2d 555 (D. Del. 2006) ................................................................ 16

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
   215 F. Supp. 3d 51 (D.D.C. 2016) .................................................................. 18

*Lewis v. Mutond*,
   62 F.4th 587 (D.C. Cir. 2023) ................................................................ 11, 12, 13

*Livnat v. Palestinian Authority*,
   851 F.3d 45 (D.C. Cir. 2017) .......................................................................... 13

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) ...................................................................... 15, 16

*Mwani v. bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) ............................................................................ 11

*Neumann v. Reinforced Earth Co.*,
   786 F.2d 424 (D.C. Cir. 1986) ........................................................................ 16

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) .......................................................................................... 6

*Rosenkrantz v. Inter-Am. Dev. Bank,*
   35 F.4th 854 (D.C. Cir. 2022) ................................................................. 6

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
   682 F.3d 1043 (D.C. Cir. 2012) .............................................................. 20

*Rubin v. Islamic Republic of Iran,*
   583 U.S. 202 (2018) ................................................................................. 9

*Second Amend. Found. v. U.S. Conf. of Mayors,*
   274 F.3d 521 (D.C. Cir. 2001) .......................................................... 12, 13

*Simon v. Republic of Hungary,*
   77 F.4th 1077 (D.C. Cir. 2023) ................................................................ 5

*Thompson Hine, LLP v. Taieb,*
   734 F.3d 1187 (D.C. Cir. 2013) ............................................................. 11

*United States v. Microsoft Corp.,*
   253 F.3d 34 (D.C. Cir. 2001) ................................................................. 17

*Vindman v. Trump,*
   2022 WL 16758575 (D.D.C. Nov. 8, 2022) ........................................... 10

*Walden v. Fiore,*
   571 U.S. 277 (2014) .......................................................................... 13, 14

* *Wye Oak Tech., Inc. v. Republic of Iraq,*
   24 F.4th 686 (D.C. Cir. 2022) ............................................................. 6, 8

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.,*
   401 U.S. 321 (1971) ............................................................................... 18

**Statutes**

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* .................................... 2, 5

Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a .......................................... 15

Lanham Act, 15 U.S.C. §§ 1051 *et seq.* ..................................................... 2, 18, 19

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* .............. 2, 19, 20

Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* ......................................... 2, 16, 17, 18

Federal Rule of Civil Procedure 12(b) ....................................................... 1, 3, 4

Defendant The Abu Dhabi National Oil Company ("ADNOC") respectfully requests that the Court dismiss the claims against ADNOC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction; under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; or under Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted.

**PRELIMINARY STATEMENT**

As explained in the motion to dismiss filed by the United Arab Emirates and individual United Arab Emirates officials (collectively, "UAE Defendants"), Plaintiffs' claims suffer from several fatal defects, including their failure to show that any exception to foreign sovereign immunity applies and their ham-fisted attempt to frame an ordinary defamation claim as a violation of various federal statutes governing business competition.

But with respect to ADNOC, an instrumentality of the UAE, the claims have an even more fundamental flaw:   Plaintiffs do not allege that ADNOC did anything actionable at all.   The complaint's only non-conclusory references to ADNOC are found at paragraphs 58 to 75, and that discussion merely recounts ADNOC's participation in energy markets outside of the United States and Plaintiff Lord Energy SA's supposed competitive threat to ADNOC.   The complaint does not allege that ADNOC participated in any of the allegedly actionable activities or that ADNOC entered into an agreement with the other Defendants (aside from conclusory allegations set forth in the counts of the complaint).   In short, Plaintiffs fail to allege that ADNOC played any role whatsoever in the alleged misconduct.   It appears that Plaintiffs named ADNOC as a defendant solely to cast their defamation claims as business-driven violations of U.S. competition laws.

That is not sufficient either to establish jurisdiction over ADNOC or to state a claim on which relief can be granted.   The complaint does not meet the rigorous standards of the Foreign

1

Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602 *et seq.*, for haling foreign instrumentalities

into U.S. courts; does not seriously attempt to meet the requirements for the exercise of personal

jurisdiction over a foreign entity; and does not meet federal pleading standards, which require far

more than the conclusory allegations that the complaint levels against ADNOC.   This Court

should accordingly dismiss the claims against ADNOC.

## PLAINTIFFS' FACTUAL ALLEGATIONS

ADNOC adopts the UAE Defendants' description of the complaint.   *See* UAE

Defendants' Motion to Dismiss, ECF 62, at 12-16 ("UAE Mot. to Dismiss").   The complaint's

core allegation is that "[t]he UAE and its officials and [unspecified] instrumentalities" used a

"front" company called Ariaf Studies and Research LLC to hire Alp Services LLC, a Swiss private

investigative firm, to work with third parties to publish "false and misleading articles" about

Plaintiffs' suspected connections to the Muslim Brotherhood.   Complaint, ECF 1, at ¶¶ 14, 17,

27, 28, 39 ("Compl.").   According to the complaint, Alp Services created these false articles and

disseminated them to various news sites and institutions, including institutions with whom

Plaintiffs did business, damaging Plaintiffs' reputation and pushing them into bankruptcy.

Compl. ¶ 17, 18.   The complaint alleges that the UAE, through two of its officials, oversaw Alp

Services and another entity, Diligence SARL, in the performance of these activities.   Compl. ¶

13.   Although these allegations in substance sound in defamation, the complaint instead pleads

claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and the Sherman Antitrust Act, 15 U.S.C.

§§ 1 *et seq.*

The complaint does not specifically allege that ADNOC undertook any part of this alleged

scheme.   Rather, the complaint alleges only that the UAE and its officials undertook the scheme

to *benefit* ADNOC by eliminating an emerging competitor.   The complaint's only ADNOC-specific discussion describes ADNOC's general participation in foreign energy markets and the supposed competitive threat posed by Lord Energy.   Compl. ¶¶ 58-75.   The complaint's extended discussion of the "unlawful enterprise" and the "smear campaign" does not mention ADNOC once.   *Id.* at ¶¶ 76-222.   The only allegations that ADNOC engaged in actionable conduct are contained in conclusory sentences in the individual counts of the complaint, which simply group ADNOC with other Defendants.   *Id.* ¶¶ 224-25, 236, 239, 256-57, 260-63, 266-70.

## LEGAL STANDARDS

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the [p]laintiff's factual allegations . . . bear closer scrutiny . . . [than] in resolving a 12(b)(6) motion for failure to state a claim," because there is an "affirmative obligation [upon the Court] to ensure that it is acting within the scope of its jurisdictional authority."   *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quotations and citations omitted). "The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction to hear the case."   *Common Purpose USA, Inc. v. Obama*, 227 F. Supp. 3d 21, 25 (D.D.C. 2016) (citation omitted).

Similarly, to survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a plaintiff must make a prima facie showing of the factual basis for asserting personal jurisdiction over a defendant."   *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 5 (D.D.C. 2019).   "To make such a showing, the plaintiff must allege specific acts connecting [the] defendant with the forum; it is not enough to rely on bare allegations or conclusory statements."   *Id.* (quotations and citations omitted).

3

Finally, to avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true factual allegations contained in the complaint, *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), but need not accept unfounded inferences, conclusory statements, or recitations of legal elements disguised as factual allegations. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Associated Gen. Contractors of Cal.*, *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Moreover, a complaint must specify "*which* Defendant is alleged to have done what," and cannot rely on generalized group pleading. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013).

## ARGUMENT

The UAE Defendants' motion to dismiss explains why the complaint is deficient in multiple respects. For efficiency, ADNOC incorporates those arguments here. But as to ADNOC, the analysis is even simpler: The complaint does not contain a single specific allegation that ADNOC committed any legal violation at all. Nor does it contain any non-conclusory allegations that ADNOC entered into an agreement with the other Defendants or engaged in any activities in the United States. The complaint alleges nothing more than that ADNOC, an instrumentality of the UAE with its own legal personhood, sells crude oil in overseas markets and stood to benefit from the elimination of Lord Energy as a competitor. That does not come close to meeting the standard to maintain a suit against a foreign instrumentality or to plead claims under the federal statutes that the complaint invokes.

I.    **ADNOC IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

Under the FSIA, this Court lacks subject matter jurisdiction over Plaintiffs' claims against ADNOC.

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Simon v. Republic of Hungary*, 77 F.4th 1077, 1090 (D.C. Cir. 2023) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). The term "[f]oreign state" includes "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). As the complaint acknowledges, "ADNOC is an instrumentality of the UAE as defined in 28 U.S.C. § 1603(b)." Compl. ¶ 26. That is because ADNOC is "a separate legal person" and "a majority of [its] shares . . . [are] owned by" the UAE. 28 U.S.C. § 1603(b). Under the FSIA, a foreign state or instrumentality is generally immune from suit in U.S. courts, unless one of the FSIA's enumerated exceptions applies. 28 U.S.C. §§ 1604, 1605, 1607.

Here, Plaintiffs rely only on the FSIA's commercial-activity exception. Compl. ¶ 38. That exception applies where "the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2) (numbers added). Given that the complaint does not specifically allege that ADNOC did anything beyond sell crude oil outside the United States, Plaintiffs cannot meet any of these three prongs. The Court should therefore dismiss the claims against ADNOC for lack of subject matter jurisdiction.

**A.     The Suit Does Not Satisfy The First Two Prongs Of The Commercial-Activity Exception Because The Claims Are Not Based Upon ADNOC's Conduct In The United States**

Under the first two prongs of the commercial-activity exception, the suit must be "based upon" either ADNOC's commercial activity in the United States or an act that ADNOC performed in the United States in connection with its commercial activity elsewhere.   The Supreme Court and the D.C. Circuit have construed this "based upon" requirement to mean that the activity or act in the United States must form the "gravamen" of the Plaintiffs' suit.   *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015); *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 702 n.2 (D.C. Cir. 2022) (Jackson, J.).   To determine the gravamen of the suit, a court must "zero[] in on the core of [the] suit," *i.e.*, the "wrongful conduct" that caused the plaintiffs' injuries. *Rosenkrantz v. Inter-Am. Dev. Bank*, 35 F.4th 854, 862 (D.C. Cir. 2022).   It is *that* conduct that must have occurred in the United States.   *See Wye Oak Tech, Inc.*, 24 F.4th at 700-01. Importantly, the activity must be performed by the foreign state itself—here, ADNOC—not other parties.   *Id.* at 701-03.

While that analysis may be difficult or nuanced in some cases, it isn't here.   The complaint does not allege that ADNOC did anything at all in the United States—let alone anything that could be deemed the gravamen or core of the Plaintiffs' suit.   The complaint's allegations about ADNOC are limited to its business activities abroad (and none of those lie at the core of the allegations either, *see infra* § I.B.).   Plaintiffs do not allege that ADNOC had contact with (or even awareness of) Ariaf Studies and Research, any role in hiring Alp Services, any contact with Alp Services' principals, any awareness of Alp Services' work with third parties, any contact with risk monitors or financial institutions, or any contact with journalists or academics.   Nor does it allege that ADNOC attended any meetings or was party to any communications about any of these alleged activities.

Instead, Plaintiffs allege only that ADNOC is the "dominant seller" of a "type of light crude oil" called Murban *in Asia*, and that in November 2016 UAE officials approved a "business plan aimed at 'generating sustained, strategic growth.'"   Compl. ¶¶ 58-59.   Plaintiffs allegedly entered the Murban market by arranging for the shipment of a different type of crude oil, Saharan Blend, to Korea, Thailand, and Singapore.   Compl. ¶ 63.   That entrance allegedly cost ADNOC tens of millions of dollars by replacing cargoes of Murban and exerting downward pressure on Murban prices, supposedly giving ADNOC an "incentive" to "eliminate" Plaintiffs.   *Id.*   None of that alleges that ADNOC conducted commercial activity or completed other acts in the United States that lie at the core of this lawsuit.   Accordingly, the first two prongs of the FSIA's commercial-activity exception do not supply a basis for subject matter jurisdiction.

**B.    The Suit Does Not Meet The Third Prong Of The Commercial-Activity Exception Because It Is Not Based Upon Any Act By ADNOC Abroad And Fails To Allege Any Direct Effects In The United States**

For two reasons, the third prong of the commercial-activity exception does not apply to Plaintiffs' claims against ADNOC either.

*First*, although the complaint describes certain conduct by ADNOC abroad (*e.g.*, participating in foreign energy markets), that alleged conduct does not form the gravamen or core of the claims here.   ADNOC's participation in energy markets is not the wrongful conduct that allegedly caused Plaintiffs' injuries.   *See Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 176 (2d Cir. 2010) ("[U]nder both the second and third clauses of the 'commercial activity' exception, Anglo-Iberia must show that its negligent supervision claim is grounded upon an act in connection with the commercial activity of Jamsostek and Indonesia elsewhere."); *supra* § I.A.

Rather, the allegedly wrongful conduct was the purported campaign to injure Plaintiffs' reputations supposedly undertaken by other Defendants. The complaint does not include a single specific allegation that ADNOC participated in that activity in any way, whether in the United States or abroad. Accordingly, this suit is not "based upon an act" by ADNOC. *Wye Oak Tech., Inc.*, 24 F.4th at 703.

To be sure, the counts of the complaint assert that ADNOC and the other Defendants committed violations of the Lanham Act, RICO, and the Sherman Act. But as to ADNOC, those allegations are entirely conclusory; nowhere does the complaint allege specifically what ADNOC did. Such skeletal allegations fail the *Iqbal* pleading standard. *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) ("We have never accepted legal conclusions cast in the form of factual allegations." (quotations and citations omitted)).

*Second*, the complaint fails to allege that ADNOC performed any act abroad causing a direct effect in the United States, as required to satisfy the third clause of the commercial-activity exception. As set forth more fully in the UAE Defendants' motion to dismiss, *see* UAE Mot. to Dismiss § I.B., the complaint asserts a handful of purported effects in the United States, *see* Compl. ¶¶ 197-200, but none of them are "direct" because they all depend on attenuated causal chains and intervening acts by third parties. The FSIA does not permit U.S. courts to exercise jurisdiction over foreign sovereign instrumentalities based on such tenuous links between their foreign activities and United States markets. If it did, the FSIA would provide little protection against suit for any instrumentality that engages in international commerce. Indeed, the Second Circuit has held that a similar suit arising out of a foreign state's publication of allegedly defamatory material did not meet the direct-effects prong. *See Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 237-38 (2d Cir. 2002).

Accordingly, the third prong of the FSIA's commercial-activity exception cannot sustain the Court's jurisdiction over the claims against ADNOC.

### C.      Conduct By Other Defendants Is Not Attributable To ADNOC

For the foregoing reasons, Plaintiffs cannot satisfy any of the three prongs of the commercial-activity exception based on the complaint's allegations about ADNOC's own activity. Plaintiffs may attempt to attribute the alleged actions of other Defendants to ADNOC under principles of alter ego, agency, or conspiracy.   But those arguments do not work.

Under *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611 (1983), a court may impute the actions of a foreign state to its instrumentality in only two circumstances: (i) "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," and (ii) where recognition of the instrumentality as an entity apart from the state "would work fraud or injustice," *id.* at 629 (citations omitted)). Plaintiffs do not allege facts that would meet either *Bancec* exception.   *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990).

In determining whether a principal-agent relationship exists, courts consider five factors originally outlined in *Bancec*: "(1) the level of economic control by the government, (2) whether the entity's profits go to the government, (3) the degree to which government officials manage the entity or otherwise have a hand in its daily affairs, (4) whether the government is the real beneficiary of the entity's conduct; and (5) whether adherence to separate identities would entitle the foreign state to benefits in United States courts while avoiding its obligations."   *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 210 (2018) (quotations and citations omitted).   The complaint nowhere pleads any of these indicia of control.   The most that the complaint alleges is that "[i]n November 2016, M.B.Z.—then head of the UAE's Supreme Petroleum Council— approved ADNOC's 2030 strategy and five-year business plan aimed at 'generating sustained,

strategic growth.'"   Compl. ¶ 59.   But approval of a *single* long-term business plan falls far short of allegations establishing a principal-agent relationship.   *See Foremost-McKesson*, 905 F.2d at 448.

Nor can Plaintiffs attribute the private Defendants' conduct to ADNOC.   The conduct of private Defendants—even ones that are closely related to or partially owned by the sovereign—is not attributable to the sovereign for purposes of the FSIA analysis.   *See Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 185 (D.D.C. 2007).   That principle applies with particular force to ADNOC given that the complaint contains no allegations that ADNOC exercised *any* control, much less sufficient control, over Alp Services or the other private third-party Defendants.   *See, e.g.*, *Doe v. Holy See*, 557 F.3d 1066, 1079-80 (9th Cir. 2009); *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 201-02 (2d Cir. 2016).   And Plaintiffs' generalized conspiracy allegations are unsupported by any specific factual content.   *See, e.g.*, *Foremost-McKesson*, 905 F.2d at 448; *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 536 (5th Cir. 1992).   The complaint alleges that the "UAE" hired Alp Services, Compl. ¶ 76, and that "UAE officials" provided "funding, strategic guidance, and final approval" to Alp Services,   *id*. ¶ 90.   The complaint does not, however, allege any agreement by ADNOC to join, direct, or further any conspiracy.   While conspiratorial agreements are sometimes inferred circumstantially, that would require far more than the conclusory allegations in the complaint.   Allegations of independent motivations do not suffice.   *See Vindman v. Trump*, 2022 WL 16758575, at *8 (D.D.C. Nov. 8, 2022).

In sum, the complaint simply does not establish any basis under the FSIA to allow Plaintiffs' claims against ADNOC to proceed.   The Court should therefore dismiss the claims against ADNOC for lack of subject matter jurisdiction.

## II.     THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ADNOC

Even if the Court had subject matter jurisdiction with respect to the claims against ADNOC, it would lack personal jurisdiction over ADNOC.

Unlike foreign sovereigns, foreign instrumentalities do not automatically meet the requirements of personal jurisdiction merely because the FSIA requirements are met.   *See GSS Group Ltd v. National Port Auth.*, 680 F.3d 805, 811, 817 (D.C. Cir. 2012); 28 U.S.C. § 1330(a)-(b).   Rather, as with other foreign litigants, a court may exercise specific personal jurisdiction over an instrumentality only if it concludes that (i) the instrumentality has minimum contacts with the United States, (ii) the suit arises out of or relates to those contacts, and (iii) exercising jurisdiction over the instrumentality would be fair and reasonable.   *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021); *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985); *GSS Group*, 680 F.3d at 811, 817; *Lewis v. Mutond*, 62 F.4th 587, 591 (D.C. Cir. 2023); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005).[1]   The foreign instrumentality's "minimum contacts must show that 'the defendant purposefully avail[ed] [it]self of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws.'" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   The onus falls on the plaintiff to "make a prima facie showing of the factual basis for asserting personal jurisdiction over a defendant."   *Butowsky*, 377 F. Supp. at 5. "To make such a showing, the plaintiff must allege specific acts connecting [the] defendant with

---

[1]     The complaint does not allege that ADNOC is subject to general personal jurisdiction in the United States, and there would be no basis for such an allegation because the company is not "fairly regarded as at home" in the United States.   *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

the forum; it is not enough to rely on bare allegations or conclusory statements."   *Id.* (quotations and citations omitted).

Here, the complaint fails to adequately allege that ADNOC has minimum contacts with the United States at all—let alone minimum contacts that relate to this suit—or that the exercise of personal jurisdiction by U.S. courts over ADNOC would be fair and reasonable.   Accordingly, this Court should dismiss the claims against ADNOC for lack of personal jurisdiction.

### A.     ADNOC Lacks Minimum Contacts With The United States

To establish "minimum contacts," Plaintiffs must make a *prima facie* showing that ADNOC "inten[tionally] target[ed]" the United States, creating "meaningful contacts, ties, or relations" that made it foreseeable that ADNOC would be sued here.   *Lewis*, 62 F.4th at 593 (cleaned up, quotations omitted).[2]   That requires Plaintiffs to "allege specific acts connecting the defendant with the forum."   *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

Plaintiffs have not come close to meeting that burden.   The complaint alleges no contacts by ADNOC with the United States.   *See supra* § I.A.   To the contrary, the complaint alleges that ADNOC operates in the Middle East and Asia.   *See, e.g.*, Compl. ¶ 58 ("ADNOC is the dominant seller of Murban [in Asia]"), ¶ 59 ("ADNOC intended to establish Murban as the dominant benchmark for crude oil prices in the Middle East"), ¶¶ 63-74 (alleging that Plaintiffs' entry into the market posed a threat to ADNOC in the Middle East).   It does not allege that ADNOC operates in the United States or has any contact with the United States at all.   And any connections

---

[2]     While an exception from the "minimum contacts" requirement exists for a corporate defendant that is "so extensively controlled by [a foreign state] owner that a relationship of principal and agent is created," *GSS Group*, 680 F.3d at 814, whether such a relationship exists is analyzed under the *Bancec* framework.   For the reasons discussed above, *see supra* § I.C., under that framework ADNOC is not an agent of UAE.

that *Plaintiffs* may have with the United States are insufficient to establish personal jurisdiction over ADNOC; the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see Lewis*, 62 F.4th at 594.

Nor can Plaintiffs use *other* Defendants' alleged contacts with the United States to establish personal jurisdiction over ADNOC by asserting that ADNOC engaged in a conspiracy with those Defendants.   As explained more fully in the UAE Defendants' motion to dismiss, *see* UAE Mot. to Dismiss § III.A., Plaintiffs cannot circumvent the defendant-specific requirements of the Due Process Clause merely by intoning the word "conspiracy."   *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175-77 (D.D.C. 2018).   And the complaint's "[c]onclusory statements [and] bare allegation[s] of conspiracy or agency" are particularly deficient with respect to ADNOC.   *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017) (cleaned up). Where a plaintiff seeks to rely on a conspiracy allegation to attribute jurisdictional contacts to a foreign defendant, it must make a prima facie showing under the substantive conspiracy standard. *Second Amend. Found.*, 274 F.3d at 524 (quotation omitted).   Here, the complaint does not even allege that ADNOC entered into the central "agreement" alleged in this case—let alone articulate a sufficiently specific and particularized allegation to satisfy due process.   *Butowsky*, 377 F. Supp. 3d at 5 (holding that to survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff must allege specific acts connecting [the] defendant with the forum; it is not enough to rely on bare allegations or conclusory statements" (quotation omitted)); *see supra* § 1.C.

Finally, even if the Court could impute other Defendants' purported contacts to ADNOC, the complaint does not describe any contacts by other Defendants with the United States sufficient to meet the "minimum contacts" standard, as laid out more fully by the UAE Defendants.   *See*

UAE Mot. to Dismiss § III.A.   The complaint alleges that the UAE hired Alp Services, a Swiss firm, to launch a "dark PR" campaign against Lord Energy, a Swiss company, and its Italian-domiciled owner.   Compl. ¶¶ 19, 20, 76, 81, 88, 90.   The harm alleged was supposedly felt in Switzerland and Italy.   Compl. ¶ 14.   "Random" and "fortuitous" contacts by third parties with the United States in the course of the wholly foreign "campaign" alleged by Plaintiffs do not render ADNOC subject to the jurisdiction of a U.S. court—especially given that Plaintiffs do not allege that ADNOC itself engaged in that campaign.   *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).

### B.    Exercising Personal Jurisdiction Would Be Unfair And Unreasonable

For reasons similar to those set out more fully in the UAE Defendants' motion to dismiss, *see* UAE Mot. to Dismiss § III.B., Plaintiffs have also failed to show that the exercise of personal jurisdiction over ADNOC would be fair and reasonable.   *Burger King*, 471 U.S. at 476.   The burden of trial in the United States would be substantial for ADNOC; neither the United States nor Plaintiffs have a significant interest in the case being tried domestically; the interstate judicial system would be best served by trial elsewhere; and there is no shared interest among the several states in applying the federal statutes invoked in the complaint to the sort of conduct alleged here.

### III.   PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF

If the Court does reach the sufficiency of the substantive allegations, it should dismiss the complaint as to ADNOC for failing to plead a viable claim for relief.   The motion to dismiss filed by the UAE Defendants carefully explains the multiple defects with each of the complaint's claims for relief—all of which attempt to shoehorn a defamation claim into an inapposite federal statutory cause of action.   ADNOC incorporates those arguments and sets them out in less detail below.

But again, as to ADNOC, the claims fail for a more basic reason:   Even if all of Plaintiffs'

legal theories and allegations were otherwise viable, the complaint alleges no specific actionable conduct by ADNOC.   The only ADNOC-specific facts relate to its lawful participation in foreign energy markets.   Compl. ¶¶ 58-75.   That activity does not form the basis of the Lanham Act, RICO, and antitrust claims.   At best, the complaint's descriptions of ADNOC's business affairs are meant to suggest a motive for *other* Defendants to engage in the purportedly unlawful "smear campaign."   Whatever relevance that purported motive may or may not have, it is insufficient to state a claim against ADNOC.

### A.   Plaintiffs' Sherman Act Claims Fail For Lack Of Subject Matter Jurisdiction And Fail To State Claims

The Court lacks subject matter jurisdiction over Plaintiffs' antitrust claims under the Foreign Trade Antitrust Improvement Act (FTAIA), 15 U.S.C. § 6a, and Plaintiffs have in any event failed to state a claim under the Sherman Act.

### 1.   The Court Lacks Subject Matter Jurisdiction Under The Foreign Trade Antitrust Improvement Act

Under the FTAIA, federal courts do not have jurisdiction over Sherman Act claims based on foreign conduct unless that conduct (1) has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce, and (2) that effect "g[ives] rise to a [Sherman Act] claim." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 160 (2004) (quoting 15 U.S.C. § 6a(1), (2)).   The FTAIA accordingly "includes two distinct causation inquiries, one asking whether the defendants' foreign conduct caused a cognizable domestic effect, and the other asking whether that effect caused the plaintiff's injury."   *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014).   Neither requirement is satisfied here.

***First***, Plaintiffs do not plausibly allege direct effects on U.S. commerce.   *See* UAE Mot. to Dismiss § IV.C.1.a.   Any U.S. effects alleged are "premised on a multitude of speculative and

changing factors affecting business and investment decisions."   *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006).

**Second**, Plaintiffs fail to allege that these speculative and indirect effects on U.S. commerce "gave rise to" their Sherman Act claims.   *See* UAE Mot. to Dismiss § IV.C.1.b.   If anything, Plaintiffs allege precisely the opposite: that their claimed antitrust injury (going out of business) had effects on U.S. commerce.   That inverted causal allegation cannot support subject matter jurisdiction.   *Lotes*, 753 F.3d at 414.

### 2.   Plaintiffs Fail To State A Claim Under The Sherman Act

Independent of the FTAIA's jurisdictional bar, Plaintiffs' Sherman Act claims fail to state a claim for which relief can be granted under either Section 1 or Section 2 of the Act.   Congress designed the Sherman Act to foster fair economic competition in the United States.   It does not govern the speech-based conduct alleged here.

**First**, the complaint does not adequately plead a relevant market.   *See* UAE Mot. to Dismiss § IV.C.2.a.; *Neumann v. Reinforced Earth Co.*, 786 F.2d 424, 429 (D.C. Cir. 1986).   The complaint is at best unclear and internally contradictory with respect to both product and geographic market definitions.

**Second**, the complaint does not adequately plead antitrust injury.   *See* UAE Mot. to Dismiss § IV.C.2.a.; *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 812 (D.C. Cir. 2001). Plaintiffs have failed to allege more than injury to "one specific competitor[,]" which "is insufficient to support a finding that the market as a whole is or will be injured."   *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 486-87 (D.C. Cir. 1996).

**Third**, the Section 1 claim fails because Plaintiffs have not adequately alleged "(1) that defendants entered into some agreement for concerted activity (2) that either did or was intended to unreasonably restrict trade in the relevant market," *Asa Accugrade, Inc. v. Am. Numismatic*

*Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005) (quoting 15 U.S.C. § 1).   *See* UAE Mot. to Dismiss § IV.C.2.b.   The complaint fails to make clear how the alleged agreement to defame Plaintiffs was an agreement to restrain trade unreasonably, whether or not it could be independently actionable as a common-law tort.   *Asa Accugrade*, 370 F. Supp. 2d at 214, 216; *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1268 (11th Cir. 2015).

Even if the complaint adequately alleged an agreement to restrain trade (it has not), it nowhere alleges that ADNOC was a party to such an agreement.   To state a Sherman Act Section 1 claim, a plaintiff must provide "enough factual matter (taken as true) to suggest that an agreement was made."   *Twombly*, 550 U.S. at 556.   "[R]epeatedly stat[ing] that [defendants] have engaged in a conspiracy" is not sufficient without supporting allegations of specific meetings or communications.   *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020).   Plaintiffs have made no such allegation against ADNOC; they do not allege ADNOC was party to the central "agreement" in the case.   Compl. ¶¶ 13, 39.

*Fourth*, the Section 2 claim cannot proceed because the complaint does not allege Defendants' possession or "willful . . . maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident," *United States v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001) (quotations and citations omitted).   *See* UAE Mot. to Dismiss § IV.C.2.c.   Plaintiffs' defamation-type allegations do not satisfy that requirement.   *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 623 F. Supp. 3d 857, 879-80 (N.D. Ill. 2022).

### 3.   Plaintiffs' Sherman Act Claims Are Time-Barred

Plaintiffs' antitrust claims are time-barred.   *See* UAE Mot. to Dismiss § IV.C.3.   The Supreme Court has explained that "damages are recoverable under the federal antitrust acts only

if suit therefore is commenced within four years after" a defendant commits an overt act that injures a plaintiff.   *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971) (quotations omitted); 15 U.S.C. § 15b.   Plaintiff Nada reported the alleged "smear campaign" at issue here to Swiss authorities in June 2018, Compl. ¶ 205, and his companies declared bankruptcy in April 2019, Compl. ¶¶ 20, 188, but Plaintiffs filed this complaint in January 2024, well past the four-year deadline.

### B.    Plaintiffs Fail To State A Claim Under The Lanham Act

Plaintiffs' attempt to recast their defamation claim as a Lanham Act claim is deficient because 15 U.S.C. § 1125(a)(1)(B) applies only to commercial speech constituting advertising or promotion in domestic commerce.   The complaint does not allege such speech and therefore fails to state a claim.

#### 1.    The Alleged Speech Is Non-Commercial

The Lanham Act "appl[ies] only to commercial speech," which means the speech must concern a "competing" product.   *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013). Plaintiffs have not alleged speech concerning a competing product, instead referring only to speech harming Plaintiffs' reputations—the province of defamation law, not the Lanham Act.   *See* UAE Mot. to Dismiss § IV.A.1.

#### 2.    The Alleged Speech Is Not Advertising Or Promotion

To qualify as advertising or promotion under the Lanham Act, speech must involve representations "about [a] product to be sold" either by the plaintiff or the defendant.   *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 215 F. Supp. 3d 51, 60 (D.D.C. 2016).   Plaintiffs have not alleged any representations about products.   *See* UAE Mot. to Dismiss § IV.A.2.

### 3.     Plaintiffs' Claim Seeks An Impermissible Extraterritorial Application Of The Lanham Act

Congress did not intend 15 U.S.C. § 1125(a)(1)(B)—on which Plaintiffs rely—to apply extraterritorially; rather, the alleged "infringing use in commerce" must occur domestically. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023).   Plaintiffs' allegations do not allege an infringing use in the United States.   *See* UAE Mot. to Dismiss § IV.A.3.

### C.     Plaintiffs Fail To State A RICO Conspiracy Claim Against ADNOC

Plaintiffs do not bring their substantive RICO claims against ADNOC.   The complaint instead alleges that ADNOC "unlawfully and willfully combined, conspired, and agreed" with other Defendants "to violate 18 U.S.C. § 1962(c)."   Compl. ¶ 256.   That claims fails as to ADNOC because the complaint does not adequately plead a substantive RICO violation.   *See* UAE Mot. to Dismiss § IV.B.1.-5.   Independently, Plaintiffs' claims fail because they have not alleged that ADNOC entered into an agreement to the commit such a violation.   Further, the RICO claims are time-barred.

### 1.     The Complaint Fails To Allege ADNOC's Agreement To The Commission Of A Substantive RICO Offense

As a threshold matter, the complaint's RICO conspiracy allegations fail because they do not adequately articulate a substantive RICO violation as to any of the Defendants.   Absent allegations of conduct by an enterprise that would amount to a substantive RICO violation if carried out, there is no basis on which a plaintiff can state a claim for RICO conspiracy.   *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 194 (D.D.C. 2019), *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 28 (D.D.C. 2012); *Byrne v. Brock*, 2020 WL 1487757, at *2 (D.C. Cir. Feb. 27, 2020).

But even if the complaint could be read to plead a substantive RICO violation, it does not contain any specific allegation that ADNOC jointed in the putative RICO conspiracy.   To state a

RICO conspiracy claim, "the complaint must allege that (1) two or more people agreed to commit a [§ 1962] subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012). That requires a plaintiff to "allege agreements—agreements to commit RICO offenses and agreements to further the endeavor to commit RICO offenses." *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 162 (D.D.C. 2016), *aff'd*, 728 F. App'x 12 (D.C. Cir. 2018) (citation omitted). Nowhere does the complaint allege that ADNOC was aware of the ends of the alleged RICO enterprise or entered into any agreement with the enterprise. *See supra* §§ I.C., II.A. Nor have Plaintiffs alleged facts sufficient even to infer such an agreement. *Id.* As explained above, the complaint simply contains no specific allegations against ADNOC at all, apart from the general discussion of its participation in foreign energy markets.

Where, as here, plaintiffs make "sparse" allegations, interspersed with conclusory statements, that certain defendants in a multi-defendant action knew about and participated "in some unspecified way" in an alleged conspiracy, they fail to state a viable RICO conspiracy claim. *Douglas v. Hirshon*, 63 F.4th 49, 56-57 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 621 (2024).

### 2.    Plaintiffs' RICO Claims Are Time-Barred

The Court should also dismiss the RICO claims because they are time-barred. *See* UAE Mot. to Dismiss § IV.B.7. "Civil RICO actions face a four year statute of limitations, which begins to run from the date of discovery of the injury." *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 308 (D.D.C. 2012). The complaint makes clear that Plaintiffs had discovered their alleged injury more than four years before filing suit. Compl. ¶¶ 139, 188, 205.

### CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice.

Dated:   July 16, 2024

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

*/s/   William A. Burck*

William A. Burck (D.C. Bar No. 979677)
John F. Bash (D.C. Bar No. 988874)
Rachel G. Frank (D.C. Bar No. 1659649)
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com
johnbash@quinnemanuel.com
rachelfrank@quinnemanuel.com

Christopher J. Clore (*pro hac vice* pending)
William A. Scarfone, Jr. (*pro hac vice* pending)
51 Madison Ave, 22nd Floor
New York, NY 10010
(212) 849-7100
christopherclore@quinnemanuel.com
williamscarfone@quinnemanuel.com

*Attorneys for The Abu Dhabi National Oil Company*

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July 2024, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

_/s/   William A. Burck_