**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAZIM NADA and LORD ENERGY SA,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE UNITED ARAB EMIRATES, ARIAF STUDIES AND RESEARCH LLC, THE ABU DHABI NATIONAL OIL COMPANY, MOHAMED BIN ZAYED AL NAHYAN, MATAR HUMAID AL-NEYADI, ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, LIONEL BADAL, MURIEL CAVIN, LORENZIO VIDINO, SYLVAIN BESSON, and JOHN DOES NOS. 1-25,<br><br>*Defendants*. | 1:24-CV-00206 (ABJ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SYLVAIN BESSON'S MOTION TO DISMISS**

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    A.    Factual Background ................................................................................................ 2

    B.    Procedural History ................................................................................................ 6

ARGUMENT ........................................................................................................................ 7

    I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BESSON ............ 8

    II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RICO
        CONSPIRACY ................................................................................................ 13

    A.    Mr. Besson Had No Knowledge Of And Did Not Agree To The Enterprise,
        Its Scheme, Or A Pattern Of Racketeering Acts ................................................. 14

    B.    Plaintiffs Failed To Allege A Substantive RICO Violation............................. 18

CONCLUSION..................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Allen v. Addi*, No. 20-CV-1650, 2021 WL 4306078 (D.D.C. Sept. 22, 2021) ......................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 8

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) ............................................................ 14

*Bell At. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 17

*Cengiz v. Salman*, No. 20-CV-3009, 2022 WL 17475400 (D.D.C. Dec. 6, 2022) .................... 12

*\*Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183 (D.D.C. 2019),
    *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020) ................................................... 15, 18

*\*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) ................................. 13, 14

*E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014),
    *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ......................................................... 18

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ........................... 3

*FC Inv. Grp. v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30 (D.D.C. 2007),
    *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008), *overruled on other grounds by Erwin-
    Simpson v. Air Asia Berhad*, 985 F.3d 883 (D.C. Cir. 2021) ........................................ 16

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ........................... 10

*Hasenfus v. Corp. Air Servs.*, 700 F. Supp. 58 (D.D.C. 1988),
    *appeal filed* (D.C. Cir. Apr. 30, 2024) ....................................................... 8, 13

*Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015) ..................................................... 15

*In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219 (S.D.N.Y. 2015) ................ 13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................. 12

*Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010) ...................................................... 11

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) ............... 13

*Klayman v. Obama*, 125 F. Supp. 3d 67 (D.D.C. 2015) .............................................. 3

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ................................. 15

*Lewis v. Mutond*, 62 F.4th 587 (D.C. Cir. 2023) ................................................................*passim*

*Livnat v. Palestinian Authority*, 851 F.3d 45 (D.C. Cir. 2017)............................................ 7, 12

McFarlane v. Esquire Mag., 74 F.3d 1296 (D.C. Cir. 1996) ...................................................... 11

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)..................................................................... 8, 9

Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983)............................................ 17

Ofisi v. Al Shamal Islamic Bank, No. 15-CV-2010, 2019 WL 1255096
(D.D.C. Mar. 19, 2019)....................................................................................................... 12

*RSM Prod. Corp. v. Freshfields Bruskhaus Deringer U.S. LLP*, 682 F.3d 1043
(D.C. Cir. 2012) ........................................................................................... 8, 14, 17

Salinas v. United States, 522 U.S. 52 (1997)............................................................................. 14

Second Amend. Found. v. U.S. Conf. of Mayors, 274 F.3d 521 (D.C. Cir. 2001) ....................... 8

Shirlington Limousine & Transp., Inc. v. San Diego Union-Trib., 566 F. Supp. 2d 1
(D.D.C. 2008) ..................................................................................................................... 10

United States v. Delgado, 401 F.3d 290 (5th Cir. 2005) ........................................................... 14

*Vuyyuru v. Reddy*, No. 22-CV-1453, 2023 WL 6160056 (D.D.C. Sept. 21, 2023)...........*passim*

## Rules and Regulations

18 U.S.C. § 1961(1)(A).............................................................................................................. 15

18 U.S.C. § 1962(c) ............................................................................................................... 7, 18

18 U.S.C. § 1962(d) ...........................................................................................................*passim*

D.C. Code § 13-423 .................................................................................................................... 9

Fed. R. Civ. P. 4(k), advisory committee's notes to 1993 amendments ...................................... 9

*Fed. R. Civ. P. 4(k)(2)........................................................................................................*passim*

## Miscellaneous

Sylvain Besson, *Les Frères musulmans refont surface au Tessin*, Le Temps (June 13, 2018),
https://www.letemps.ch/economie/freres-musulmans-refont-surface-tessin ................... 3

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and LCvR 7, Defendant Sylvain Besson hereby moves this Court to dismiss the Complaint, ECF No. 1, filed on January 24, 2024 ("Complaint" or "Compl."), with prejudice for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

More than six years ago, Swiss journalist Sylvain Besson wrote an eight-paragraph article in a Swiss newspaper, which was published in French.  Apparently disagreeing with the article's assertions, upset by the newspaper's placement of the article next to a story about Swiss intelligence, and having blown past the relevant Swiss statute of limitations for defamation-related causes of action, Plaintiffs have dressed up a (weak) defamation claim in Switzerland as a (weaker) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in the United States.  But the claim against Mr. Besson has no place in U.S. courts, this Court has no personal jurisdiction over him, and the claim fails as a matter of law.  It should therefore be dismissed.

*First*, neither this Court nor any U.S. court has general or specific personal jurisdiction over Mr. Besson.  The Complaint alleges that Mr. Besson, a well-known Swiss journalist who lives in Switzerland and is a Swiss citizen, wrote a single article while in Switzerland, for a Swiss newspaper, in one of Switzerland's national languages, about a Swiss company (Plaintiff Lord Energy) and its founder, an Italian resident (Plaintiff Hazim Nada).  The Complaint makes no allegation that Mr. Besson intended his article to reach a U.S. audience at all, much less that he intended to harm anyone in the United States.  (Or to harm anyone, for that matter.)

*Second*, even if this Court had personal jurisdiction over Mr. Besson (it does not), Plaintiffs' efforts to create a false narrative about Mr. Besson should be rejected outright.  There

are insufficient allegations in the Complaint to plausibly plead that Mr. Besson knew about or agreed to join a conspiracy of any kind, including to form an enterprise to engage in a pattern of predicate racketeering acts.  And even if there were, Plaintiffs have failed to adequately plead each essential element of a RICO claim.

Accordingly, this Court should dismiss the claim against Mr. Besson with prejudice.

## **BACKGROUND**

A.      **Factual Background**[1]

Sylvain Besson, an award-winning, longtime journalist, is a citizen of, resides in, and is domiciled in Switzerland.  Compl. ¶ 35.  Mr. Besson was born in a small town in Switzerland about 60 kilometers from Geneva.  When he was nineteen years old, Mr. Besson moved to Geneva, where he graduated from a Swiss university, and shortly thereafter, started working as an investigative journalist in Switzerland in 1996.  Beginning in 1998, for two decades, Mr. Besson worked as a journalist at *Le Temps*, a Swiss daily newspaper based in Geneva.[2]  Mr. Besson has never lived in the United States or worked for any U.S.-based media company.

The Complaint is sparse on Mr. Besson's involvement in the underlying conduct.  The crux of Plaintiffs' allegations about Mr. Besson's conduct centers around an article he published in January 2018 in *Le Temps*.  Specifically, the Complaint alleges that a Swiss private investigative firm, Alp Services ("Alp"), "hired" Mr. Besson to write an article in early 2018,

---

[1]  Mr. Besson recites facts relevant to his motion, but incorporates the recitation of the Complaint in the Memorandum of Law in Support of Defendants the United Arab Emirates, His Highness Sheikh Mohamed bin Zayed Al Nahyan, and Matar Humaid Al-Neyadi's Motion to Dismiss, also filed on July 16, 2024, ECF No. 62-1 ("UAE Defs.' Br.").

[2]  The Complaint refers to Mr. Besson as a "journalist," placing the term in quotations marks.  *Id.* ¶ 17.  To suggest that Mr. Besson is anything but a seasoned, professional, and experienced journalist flies in the face of his nearly thirty years of journalistic experience and firmly established reputation.

which purportedly included "claims there were 'traces' of 'historical M[uslim ]B[rotherhood] networks' at Lord Energy and that 'this new generation has sometimes kept some militant activities.'"  *Id.* ¶¶ 17, 105.

While personal jurisdiction does not exist and the conspiracy to commit RICO claim against Mr. Besson fails even when accepting all of Plaintiffs' characterizations as true, it is important to note that the Complaint misrepresents the article.[3]  On January 5, 2018, Mr. Besson published two articles in *Le Temps*:  the first was an article titled "Les services secrets suisses ciblent des islamistes pro-Qatar," which translates[4] to "Swiss secret services target pro-Qatar Islamists."  Lewin Decl.[5] Ex. B (the "Swiss Secret Service Article").  Separately, but published at the same time, Mr. Besson also wrote an article titled "Les Frères musulmans refont surface au Tessin," which translates to "The Muslim Brotherhood resurfaces in Ticino," Switzerland.  *Id.* Ex. C (the "Muslim Brotherhood Article").[6]

---

[3] The Court may consider the original article and the online versions on a motion to dismiss because they are incorporated by reference in the Complaint.  *See Klayman v. Obama*, 125 F. Supp. 3d 67, 74 n.7 (D.D.C. 2015) (considering article referenced in complaint on motion to dismiss) (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

[4] The articles were published in French—one of the national languages in Switzerland—and translations are available online through Google translate.

[5] The "Lewin Decl." refers to the Declaration of Nicholas J. Lewin, filed concurrently with and in support of this motion.

[6] This article was updated on June 13, 2018, as indicated on *Le Temps*'s website.  *See* Sylvain Besson, *Les Frères musulmans refont surface au Tessin*, Le Temps (June 13, 2018), https://www.letemps.ch/economie/freres-musulmans-refont-surface-tessin.  The updated article contains one additional sentence that was not in the original article, which was a statement from Lord Energy and Hazim Nada regarding the previously made statement that Lord Energy employees were hired "on the basis of their abilities and experience," adding that "[t]his is particularly the case of Davide Piccardo whose politico-religious activities in Italy are 'neither supported nor approved' by Lord Energy."  *Compare id.*, *with* Lewin Decl. Ex. A.



As can be seen in the above PDF version of the hard copy publication, the Muslim Brotherhood Article, which appears on the lower right-hand side of the above image, was published as a separate insert, next to the larger Swiss Secret Service Article, which begins in the upper left-hand side of the above image. *See id.* Ex. A at 2–3; *see also id.* Ex. C (noting that "[t]his article was originally published as a complement to a larger article on January 5, 2018").

The Swiss Secret Service Article focuses on efforts by the Swiss Intelligence Service to examine any connection between Qatar-based Islamists and those accused of supporting Al-Qaeda. *Id.* Exs. A, B. It does not refer in any way—directly or indirectly—to Plaintiffs, nor does it focus on the oil industry writ large. *Id.*

The complementary Muslim Brotherhood Article published under a different headline discusses how the "historical networks" of the Muslim Brotherhood in Europe, which "ha[d]

been very discrete in recent years," "ha[d] not entirely disappeared." *Id.* Ex. C.  Mr. Besson had

familiarity with the "historical networks" of the Muslim Brotherhood because of his 2005 book

on the subject.  Compl. ¶ 104.  The Muslim Brotherhood Article describes how "traces" of the

Muslim Brotherhood in the form of known Muslim Brotherhood members' sons who worked at

Lord Energy, including Hazim Nada, could be found in Europe.  Lewin Decl. Ex. C.  The article

does not claim that Mr. Nada or other Lord Energy employees are themselves members of the

Muslim Brotherhood, instead referring to Mr. Nada's *father's* connection to the Brotherhood,

another employee's link to the Forum of European Muslim Youth and Student Organization,

which was "considered close to the Muslim Brotherhood" at the time, and a third, Italian

employee being "close" to the Muslim Brotherhood.  *Id.*  The article includes a response from

Mr. Nada, recounting that he is not a member of the Muslim Brotherhood, he disavows any

political or religious beliefs of the Muslim Brotherhood, and "it is natural that children who grew

up together in the same environment end up becoming colleagues." *Id.*

Neither article states that Plaintiffs were under Swiss surveillance or that they were under

investigation.  In June 2018, Mr. Besson "confirm[ed]" what the article actually did, and did not,

contain—stating that "the article published on January 5th, 2018 . . . did not state, assert or imply

that the company Lord Energy is or has been under surveillance by the swiss intelligence service

SRC."  Compl. ¶ 105.[7]

In the lead up to publishing his article, the Complaint alleges that Mr. Besson met with

Mario Brero "several times" while Mr. Brero was "pitching the UAE."  *Id.* ¶ 103.  It further

alleges that Alp sent a file titled "arnica 3-lord energy note-sylvain-20171214" to Mr. Besson,

---

[7] The Complaint calls this document a "retraction," but Mr. Besson never claimed that Plaintiffs were "targeted or investigated by Swiss authorities" or that anyone at Lord Energy "kept militant activities." *Id.*

which Mr. Besson "used" in drafting.  *Id.* ¶ 102.  The Complaint also makes conclusory

allegations that Mr. Besson was "on Alp's payroll," "published stories he knew to be false and

misleading at Alp's behest," "gave Alp the idea to paint [Plaintiffs] as terrorist financiers," and

"benefit[ed] financially" from publishing his January 2018 article.  *Id.* ¶¶ 8, 35, 104.  But, as

further discussed below, these allegations are unsupported by specific facts (and, in any event,

are categorically false).  The Complaint does not allege that Mr. Besson ever wrote about

Plaintiffs in any other publication, does not reference a single other article that Mr. Besson

purportedly wrote "at Alp's behest," does not provide any details about how Mr. Besson "gave

Alp the idea to paint [Plaintiffs] as terrorist financiers," and does not provide support for the

assertion that Mr. Besson "knew" this article—or any others—were false or misleading.

After Mr. Besson published his articles on January 5, 2018, the Complaint alleges that

Alp hired other bloggers and reporters to publish articles regarding Plaintiffs with "more

incendiary tones."  *Id.* ¶¶ 17, 106.  Plaintiffs claim that other Defendants and reporters used the

other articles and blogs to "put pressure on Swiss federal and local authorities to investigate"

Lord Energy.  *Id.* ¶ 106.  The Complaint does not allege that Mr. Besson sent his article to other

reporters, encouraged others to publish about Plaintiffs, had a single communication with another

reporter about his article or its contents, or played any role in putting pressure on Swiss

authorities.

### B.    Procedural History

More than six years after Mr. Besson published the January 2018 articles, Plaintiffs filed

their Complaint, naming Mr. Besson in a single count for conspiracy to violate RICO pursuant to

18 U.S.C. § 1962(d).  *Id.* ¶¶ 254–58.  Plaintiffs do not name Mr. Besson in their substantive

RICO count alleging violations of 18 U.S.C. § 1962(c), *id.* ¶¶ 240–53, or claims under the Lanham and Sherman Acts, *id.* ¶¶ 223–39, 259–71.

On March 29, 2024, Plaintiffs' counsel filed purported proof of service of the summons and Complaint on Mr. Besson.  ECF No. 16.  But service was not successful for Mr. Besson: Mr. Besson had not been served with the summons and Complaint because he does not, and has never, lived or been present at the address listed in Plaintiffs' proof of service; the summons and Complaint had been served on the wrong person.  ECF No. 44 at 2.  On April 9, 2024, Plaintiffs filed a Motion and Affidavit seeking an Entry of Default against Mr. Besson, positing that Mr. Besson failed to timely respond to the Complaint.  *See* ECF Nos. 30, 31.  The Clerk of Court filed the Entry of Default on April 10, 2024.  ECF No. 33.  With all parties agreeing that the summons and Complaint were not properly served on Mr. Besson, Mr. Besson filed a Consent Motion to Vacate the Clerk's Entry of Default on May 3, 2024.  ECF No. 44.  This Court granted Mr. Besson's Motion to Vacate the Clerk's Entry of Default on May 6, 2024.  Minute Order, dated May 6, 2024.

Mr. Besson waived service, ECF No. 45, and joined the parties' briefing schedule, Minute Order, dated May 6, 2024, for the limited purpose of moving to dismiss the Complaint.

## ARGUMENT

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the Court should consider whether a plaintiff's complaint "make[s] a *prima facie* showing of the pertinent jurisdictional facts" with respect to each foreign defendant.  *Lewis v. Mutond*, 62 F.4th 587, 592 (D.C. Cir. 2023) (quoting *Livnat v. Palestinian Authority*, 851 F.3d 45, 56–57 (D.C. Cir. 2017)).  Plaintiffs have the burden of pleading sufficient facts showing personal jurisdiction, which requires "more than conclusory

statements and bald accusations." *Vuyyuru v. Reddy*, No. 22-CV-1453, 2023 WL 6160056, at *5 (D.D.C. Sept. 21, 2023) (citing *Hasenfus v. Corp. Air Servs.*, 700 F. Supp. 58, 62 (D.D.C. 1988)), *appeal filed* (D.C. Cir. Apr. 30, 2024); *see also Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) (noting plaintiffs have burden of pleading personal jurisdiction).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint must contain sufficient factual matter, if "accepted as true, to 'state a claim to relief [under § 1962(d)] that is plausible on its face.'" *RSM Prod. Corp. v. Freshfields Bruskhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[F]acts that are merely consistent with a defendant's liability' and demonstrate only a possibility, but not the plausibility, of relief fail to satisfy this standard." *Id.* (quoting *Ashcroft*, 556 U.S. at 678).

## I.      THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BESSON

The sole claim against Mr. Besson should be dismissed with prejudice because, as a Swiss citizen who wrote a French-language article in Switzerland about a Swiss company, Plaintiffs have not met their burden of establishing that this Court has general or specific personal jurisdiction over him. *See Second Amend. Found.*, 274 F.3d at 523; *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

As a preliminary matter, Plaintiffs do not argue that this Court has general jurisdiction over Mr. Besson. Indeed, Mr. Besson is not domiciled in the District of Columbia. *See Lewis*, 62 F.4th at 591. To the contrary, and as Plaintiffs acknowledge, Mr. Besson is only domiciled in Switzerland—where he was born, is a citizen, and has resided for virtually all of his life. Compl. ¶ 35. Indeed, he has never been a resident anywhere in the United States.

Recognizing that Mr. Besson is and has always been a Swiss resident, Plaintiffs assert that this Court has jurisdiction over him pursuant to Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)").  Compl. ¶ 43.[8]  Under Rule 4(k)(2), a federal court may exercise specific personal jurisdiction over a defendant where (1) "a claim aris[es] under federal law," (2) "a summons has been served," (3) "the defendant is not subject to the jurisdiction of any single state court," and (4) "the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States."  *Mwani*, 417 F.3d at 10.  Mr. Besson does not dispute that a claim under 18 U.S.C. § 1962(d) arises under federal law (albeit one that fails as a matter of law, *see infra* Section II), that he accepted service of the summons and Complaint, ECF No. 45, or that no single state court has jurisdiction over him.

With respect to the fourth element, however, exercising personal jurisdiction over Mr. Besson would violate due process and is inconsistent with the Constitution.  Plaintiffs cannot carry their burden that Mr. Besson "has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment."  *Mwani*, 417 F.3d at 11 (citing Fed. R. Civ. P. 4(k), advisory committee's notes to 1993 amendments).  To provide a defendant with "fair warning that [his] activities would subject [him] to the jurisdiction of the United States," a court will only have specific personal jurisdiction over a foreign defendant where his "efforts are purposefully directed" at the United States.  *Mwani*, 417 F.3d at 12–13 (holding personal jurisdiction under Rule 4(k)(2) existed because complaint alleged specific objective of terrorist defendants targeting U.S. embassy in

---

[8] Plaintiffs do not allege that Mr. Besson is subject to jurisdiction under D.C. Code § 13-423, the District of Columbia's long-arm statute.  But even if they had, the exercise of personal jurisdiction would be inappropriate for the same reasons it is inappropriate under Rule 4(k)(2)— Mr. Besson and the conduct alleged in the Complaint have no nexus to the United States overall, much less to the District of Columbia specifically.

Kenya was "to cause pain and sow terror in the embassy's home country, the United States," and defendants had previously committed multiple overt acts within United States); *see also Lewis*, 62 F.4th at 593 (holding no personal jurisdiction existed).

To allege that a defendant has "purposefully directed" their conduct at the United States "is a high bar." *Vuyyuru*, 2023 WL 6160056, at *8. Plaintiffs have not alleged a single fact to indicate that Mr. Besson purposefully directed any conduct at the United States. To the contrary, the Complaint alleges that Mr. Besson is a Swiss citizen and resident, Compl. ¶ 35, published an article in *Le Temps*, a Swiss newspaper, *id.* ¶¶ 35, 105, and mentioned the Swiss-based Lord Energy and Italian resident Hazim Nada in an article describing activities in a southern canton of Switzerland and a nearby enclave of Italy, with no reference to the United States, *id.* ¶¶ 19–20, 105; Lewin Decl. Exs. A–C. And there is no allegation that Mr. Besson published this article, which he wrote and was published in French, with the intention of it reaching a U.S. audience. *See Shirlington Limousine & Transp., Inc. v. San Diego Union-Trib.*, 566 F. Supp. 2d 1, 6 (D.D.C. 2008) (holding that to assert personal jurisdiction over out-of-state newspaper, "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on [readers in the forum state]") (alterations in original); *see also* UAE Defs.' Br. Section III.A (collecting cases).

Relatedly, the mere fact that an article written in Switzerland may have been accessible through the Internet in the United States is insufficient to establish personal jurisdiction absent purposeful activity targeting the United States. *See GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349–50 (D.C. Cir. 2000) (rejecting assertion that mere accessibility of defendants' websites in the forum is sufficient to establish personal jurisdiction); *Allen v. Addi*, No. 20-CV-1650, 2021 WL 4306078, at *9 (D.D.C. Sept. 22, 2021) (concluding that posting

interview from Turkish television on YouTube and personal website discussing plaintiff's alleged affiliation with the foreign terrorist organization was insufficient to confer personal jurisdiction over defendant) (citing *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1300 (D.C. Cir. 1996)).  To the extent other authors published "a flurry of fake reporting" following Mr. Besson's January 2018 *Le Temps* article, including on U.S.-based "private media outlets" and "internet blogs," the Complaint does not allege that Mr. Besson had any role whatsoever in those publications.  Compl. ¶¶ 39, 106, 154–57; *see also* UAE Defs.' Br. Section III.A.

That Mr. Nada is a U.S. citizen and that Lord Energy had a U.S.-based subsidiary does not alter this conclusion.[9]  Personal jurisdiction pursuant to Rule 4(k)(2) is not satisfied "just because a defendant knew that his actions might impact a U.S. citizen or even the country generally." *Vuyyuru*, 2023 WL 6160056, at *20–21 (citing *Lewis*, 62 F.4th at 587, and *Livnat*, 82 F. Supp. 3d at 33).  In *Lewis*, for example, the D.C. Circuit concluded that Rule 4(k)(2) did not confer personal jurisdiction over a U.S. citizen's claims that foreign officials in the Democratic Republic of the Congo engaged in a "propaganda campaign" to "frame him as an American mercenary." *Lewis*, 62 F.4th at 593–94.  The Court observed that the plaintiff's U.S. citizenship "was incidental to the [defendants'] chief concern" regarding efforts to influence foreign politics and defendants "cannot be haled into an American court just because [the plaintiff] concludes that [defendants'] motivation was against the United States." *Id*. at 594.  Similarly, in *Livnat*, the Court held that the plaintiffs could not assert personal jurisdiction

---

[9] The article does not make any reference to Mr. Nada's citizenship.  It also does not mention— nor is there any indication that Mr. Besson knew of—Lord Energy's Texas-based subsidiary, Lord Energy Americas.  But even if the Complaint had alleged Mr. Besson's article targeted a U.S. citizen or could have some impact on Lord Energy Americas (it does not), that would not be sufficient to sustain an assertion of personal jurisdiction over Mr. Besson.  *See Vuyyuru*, 2023 WL 6160056, at *8; *see also Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010).

against the Palestinian Authority arising from a terrorist attack in the West Bank with conclusory allegations that the attack was intended to influence U.S. policy. *Livnat*, 851 F.3d at 57.

Ultimately, Plaintiffs' sole allegation with respect to Mr. Besson's purported contacts with the United States is the conclusory statement that "Defendants have sufficient minimum contacts with the United States." Compl. ¶ 43. Such "conclusory statements or a bare allegation . . . such that they 'merely state the plaintiff's theory of specific jurisdiction" is "improper." *Lewis*, 62 F.4th at 593 (cleaned up) (quoting *Livnat*, 851 F.3d at 57). This conclusory allegation, without a single fact on which to base it, fails to meet the "high bar" to plead personal jurisdiction pursuant to Rule 4(k)(2). *Vuyyuru*, 2023 WL 6160056, at *8 (granting motion to dismiss for lack of personal jurisdiction where, even assuming defendant knew his actions might have impacted a U.S. citizen or the United States generally, it did not "give rise to the conclusion that defendants must have been targeting the United States . . . as opposed to one resident") (quoting *Cengiz v. Salman*, No. 20-CV-3009, 2022 WL 17475400, at *12 n.17 (D.D.C. Dec. 6, 2022) (denying personal jurisdiction and noting that conclusion that "[Jamal] Khashoggi's murder was 'expressly aimed at' the United States" did "not necessarily follow," as "D.C. Circuit precedent counsels against drawing unsupported inferences—even if reasonable—when analyzing whether defendants intended to cause effects in the forum state")). And it does nothing to counter the fact that Mr. Besson being hailed into a U.S. court violates "traditional notions of fair play and substantial justice." *Lewis*, 62 F.4th at 591 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also* UAE Defs.' Br. Section III.B.

Plaintiffs have not articulated a conspiracy theory of personal jurisdiction in the Complaint, which makes perfect sense, because such a theory would fail. *See, e.g.*, *Ofisi v. Al Shamal Islamic Bank*, No. 15-CV-2010, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019)

(noting no court to have considered the question has permitted assertion of personal jurisdiction pursuant to a conspiracy theory under Rule 4(k)(2)); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (holding "'bald speculation' or a 'conclusory statement' that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory");[10] *see also infra* Section II.

It is with good reason that U.S. law does not grant U.S. courts personal jurisdiction over someone like Mr. Besson.  If this case were to proceed against him, journalists around the world, publishing legitimate articles in foreign publications, in foreign languages, with predominantly foreign readers would face virtually limitless exposure to suit in the United States.  That is not— and cannot be—the breadth of the law.

Accordingly, because this Court does not have personal jurisdiction over Mr. Besson, the Complaint against Mr. Besson should be dismissed with prejudice.[11]

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RICO CONSPIRACY

Even if this Court had personal jurisdiction over Mr. Besson, the Complaint fails to plausibly allege that Mr. Besson knowingly agreed to a conspiracy to violate RICO.  Plaintiffs have alleged neither knowledge of nor "subjective agreement" between Mr. Besson and the other Defendants "to further the predicate acts allegedly carried out by the" purported enterprise.  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005).  Similarly, Plaintiffs have failed to

---

[10] *See also, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting conspiracy theory of personal jurisdiction under Rule 4(k)(2) because "[i]f Congress had wanted such a general exception it could have so legislated in connection with Rule 4(k)(2)," and such a theory does not comport with "the constraints of due process"); *Hasenfus*, 700 F. Supp. at 62 (rejecting conspiracy theory where allegations were conclusory).

[11] If this Court holds that it has personal jurisdiction over Mr. Besson, Mr. Besson reserves his right to move this Court to dismiss the claim against him pursuant to the doctrine of *forum non conveniens.*

plausibly allege (1) an enterprise that (2) engaged in a pattern of racketeering activity, which (3) proximately caused (4) a domestic injury (5) within the four-year statute of limitations.

**A.** **Mr. Besson Had No Knowledge Of And Did Not Agree To The Enterprise, Its Scheme, Or A Pattern Of Racketeering Acts**

To plausibly state a claim for a conspiracy pursuant to 18 U.S.C. § 1962(d), a complaint must allege "(1) two or more people agreed to commit a subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp.*, 682 F.3d at 1051 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  In this Circuit, a plaintiff must allege that each defendant knew about and agreed to facilitate the scheme.  *See id.* at 1052 (upholding dismissal of RICO conspiracy claim because "RSM failed to allege facts sufficient to support a plausible inference that [defendant] knew of and agreed to further the bribery-racketeering conspiracy"); *Doe I*, 400 F. Supp. 2d at 120 (holding to plead a conspiracy claim under § 1962(d), a "plaintiff must show a subjective agreement on the part of the [] defendant[] to further the predicate acts allegedly carried out" by other defendants).  Here, the Complaint fails to allege that Mr. Besson had any knowledge of, or agreed to, "the essential nature of scope of the [RICO] enterprise," *RSM Prod. Corp.*, 682 F.3d at 1051 (alteration in original) (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)), "much less that [he] 'knew of and agreed to the overall objective of the RICO offense,'" *id.* (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)).

As a preliminary matter, Mr. Besson's January 2018 article cannot serve as its own predicate act for purposes of RICO.  Giving the Complaint its most charitable reading, Plaintiffs have alleged that his January 2018 article was false (it was not), which would amount to a (meritless and untimely) defamation claim against Mr. Besson.  But even if his article contained falsehoods and was not protected as an expression of free speech or a statement of opinion, defamation is not a RICO predicate act, nor can Plaintiffs "shoehorn a defamation claim into the

RICO framework." *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183 (D.D.C. 2019), *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020); *see also Hourani v. Mirtchev*, 796 F.3d 1, 10 n.3 (D.C. Cir. 2015) (citing 18 U.S.C. § 1961(1)(A)) (holding defamation is not a RICO predicate act); UAE Defs.' Br. Section IV.B.1 (collecting cases).

Knowing that they have no factual basis to include Mr. Besson in this suit, Plaintiffs seek to circumvent their pleading requirements by alluding to a purported and vague connection between Mr. Besson and Alp, alleging that (1) "the enterprise hired 'journalist' Sylvain Besson to write an article" about Lord Energy, Compl. ¶ 17, (2) Mr. Besson was "on Alp's payroll" and "benefitting financially" from the article, *id.* ¶¶ 35, 104, (3) Alp "emailed [a] memo" to Mr. Besson regarding Plaintiffs, *id.* ¶ 102, (4) Mr. Besson met with Mr. Brero while the latter was "pitching the UAE," calling the two "friends and co-conspirators," *id.* ¶ 103, and (5) "on information and belief," Mr. Besson "gave Alp the idea to paint [Plaintiffs] as terrorist financiers," *id.* ¶ 35. These allegations are conclusory and should be rejected as pure speculation and unsupported inferences. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). But even if this Court accepts these conclusory allegations as true for purposes of this motion, they are insufficient to plausibly plead that Mr. Besson knew about the other Defendants' purported scheme of running a "'dark' public relations" campaign against Plaintiffs. Compl. ¶¶ 1, 39.

*First*, there are no allegations that Mr. Besson had any knowledge of an "enterprise," its purported scheme, or an anticipated pattern of racketeering. Notably, the Complaint does not allege that during the purported meetings between Mr. Besson and Mr. Brero, *id.* ¶ 103, Mr. Brero told Mr. Besson about the pitch to the UAE, that the UAE was involved in the creation or dissemination of the "memo," that the UAE wanted Mr. Besson to write an article, or that the

15

UAE sought to engage in a "dark public relations campaign" against Plaintiffs. And that Alp emailed a memo to Mr. Besson containing information about Plaintiffs does nothing to suggest that Mr. Besson knew about a conspiracy to smear Lord Energy and its founder. All this suggests is that Mr. Besson, as a journalist, received information from a source—a task typical of any journalist. Similarly, the Complaint does nothing to support its assertion that Mr. Besson "gave Alp the idea" to claim that Plaintiffs were terrorist financiers. Nothing in the January 2018 article claims that Plaintiffs were terrorist financiers. And, to the extent the Complaint alleges any relationship existed between Mr. Besson and Alp, it is alleged to have flowed from Alp to Mr. Besson, not the other way around.[12]

*Second*, the assertions that Mr. Besson was "on Alp's payroll," *id.* ¶ 35, was a "paid journalist," *id.* ¶ 101, and "benefit[ed] financially," *id.* ¶ 104, are unsupported. The Complaint contains no facts supporting the allegation that Alp paid Mr. Besson for his January 2018 article or otherwise. (Nor could it; any suggestion that Alp compensated Mr. Besson in any way to publish a fabricated story about Plaintiffs is entirely false.) Indeed, Plaintiffs have carefully crafted their Complaint by using vague and conclusory language to elide the fact that there is no factual support that Mr. Besson ever received a dime from Alp or any other Defendant (because he in fact was neither offered nor received any such payment).

In any event, even if this Court credits Plaintiffs' innuendo as true, being paid for or knowing the source of a payment to engage in particular conduct is insufficient to plausibly

---

[12] The characterization that it was Mr. Besson's idea to smear Plaintiffs goes against Plaintiffs own allegation that it was *Alp* who sent *Mr. Besson* a "memo," and Mr. Besson "used the information Alp supplied to write an article for *Le Temps*." *Id.* ¶¶ 102, 246(b); *see FC Inv. Grp. v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 34 (D.D.C. 2007) (noting internally inconsistent allegations in complaint "serves only to obfuscate any alleged wrongdoing on the part of defendant"), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. Air Asia Berhad*, 985 F.3d 883 (D.C. Cir. 2021).

allege that Mr. Besson knew about the broader scheme and agreed to participate in it.  *See RSM Prod. Corp.*, 682 F.3d at 1050 (holding that even if law firm was paid by and was aware of "the source of [its] fees," plaintiffs failed to plead law firm was "aware of the essential nature and scope of the RICO enterprise" or "knew of and agreed to the overall objective of the RICO offense") (citations omitted) (collecting cases).

*Finally*, calling Mr. Besson and Mr. Brero "co-conspirators" without factual support carries no weight and is insufficient to plead that Mr. Besson was part of any alleged conspiracy to violate RICO.  *Cf. Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–88 (D.C. Cir. 1983) (holding plaintiff's allegation that defendants were "alleged coconspirators" was insufficient "conclusionary statement").  These conclusory allegations do not even approach, much less "nudge [Plaintiffs'] claims across the line from conceivable to plausible."  *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Setting aside the few paragraphs in the Complaint that even mention Mr. Besson, what stands out most is where Mr. Besson is *not* mentioned.  The Complaint does not allege that Mr. Besson intended his January 2018 article to have any adverse effect on Plaintiffs.  The Complaint does not allege that Mr. Besson had any role in disseminating his January 2018 article to other authors or publications.  The Complaint does not allege that Mr. Besson had any contact with anyone else allegedly participating in this conspiracy other than Mr. Brero, or that Mr. Besson knew that Mr. Brero was acting on behalf of the UAE.  And the Complaint does not allege that Mr. Besson played any role in contacting banks to adversely affect Plaintiffs' banking relationships.  Because the Complaint wholly fails to allege that Mr. Besson had any knowledge of or agreed to participate in the enterprise, its scheme, or the predicate racketeering acts, the claim against Mr. Besson should be dismissed.

**B.** **Plaintiffs Failed To Allege A Substantive RICO Violation**

Plaintiffs' conspiracy to commit RICO claim cannot exist for the additional and independent reason that their substantive RICO claim—in which Mr. Besson is not named—fails as a matter of law. *See E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014) ("[Because] the plaintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)–(c), its claim under § 1962(d) must fail, because there was no violation in which the defendant could have conspired."), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *Ctr. for Immigr. Stud.*, 410 F. Supp. 3d at 194 (similar). Mr. Besson explicitly incorporates the UAE Defendants' arguments that Plaintiffs failed to state a claim under 18 U.S.C. § 1962(c). *See* UAE Defs.' Br. Section IV.B. Specifically, the Complaint fails to allege a non-conclusory domestic injury, any predicate racketeering acts, a pattern of racketeering activity, that the alleged predicate offenses were the but for and proximate cause of Plaintiffs' injury, and an enterprise. *Id.* Section IV.B.1–5. Even if Plaintiffs had alleged each of these elements, Plaintiffs discovered any racketeering activity more than four years prior to filing their Complaint, rendering the claim time barred. *Id.* Section IV.B.7.

Accordingly, regardless of whether the Complaint plausibly pleads personal jurisdiction over Mr. Besson, or that Mr. Besson knew of and agreed to the enterprise's scheme, the Complaint must be dismissed for failure to state a claim for conspiracy to violate RICO for the reasons set forth in the UAE Defendants' Brief.

## <u>CONCLUSION</u>

For the foregoing reason, Mr. Besson respectfully requests that this Court dismiss the

claim against him with prejudice.

Dated:  July 16, 2024                                    Respectfully submitted,
       Washington, D.C.

                                            By:  */s/ Michael O'Leary*
                                          Michael O'Leary (D.C. Bar No. 1014610)
                                          HOLLAND & HART LLP
                                          505 9th St. NW, Suite 700
                                          Washington, DC 20004
                                          Tel.: (202) 654-6922
                                          MJOleary@hollandhart.com

                                          Nicholas J. Lewin (*pro hac vice*)
                                          Molly K. Webster (*pro hac vice*)
                                          KRIEGER LEWIN LLP
                                          350 Fifth Avenue, 77th Floor
                                          New York, New York 10118
                                          Tel.: (212) 390-9550
                                          nick.lewin@kriegerlewin.com
                                          molly.webster@kriegerlewin.com

                                          *Counsel for Sylvain Besson*