UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAZIM NADA and LORD ENERGY SA,

                       *Plaintiffs*,

v.

THE UNITED ARAB EMIRATES, ARIAF STUDIES AND RESEARCH LLC, ALP SERVICES SA, DILIGENCE SARL, MARIO BRERO, LIONEL BADAL, MURIEL CAVIN, LORENZIO VIDINO, SYLVAIN BESSON, and JOHN DOES NOS. 1-25,

                       *Defendants*.

1:24-CV-00206 (ABJ)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT SYLVAIN BESSON'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER MR.
        BESSON ............................................................................................................. 2

        A.    Plaintiffs Do Not Have Specific Personal Jurisdiction Over Mr. Besson
            Under Rule 4(k)(2) ................................................................................... 3

        B.    This Court Does Not Have Specific Personal Jurisdiction Under
            Rule 4(k)(1) ............................................................................................. 9

    II.   PLAINTIFFS FAILED TO PLAUSIBLY PLEAD THAT MR. BESSON
        KNOWINGLY JOINED A RICO CONSPIRACY ...................................................... 11

CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aljabri v. Saud*,
   No. 20-CV-2146, 2022 WL 4598519 (D.D.C. Sept. 30, 2022),
   *vacated on other grounds by* 106 F.4th 1157 (D.C. Cir. 2024) ......................................... 4

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015) .................................................................................. 4, 5

*\*Cockrum v. Donald J. Trump for President, Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018) ............................................................................*passim*

*Collingsworth v. Drummond Co. Inc.*,
   No. 19-CV-1263, 2020 WL 2800612 (D.D.C. May 29, 2020),
   *aff'd*, 839 F. App'x 567 (D.C. Cir. 2021) ........................................................................ 10

*Crenshaw v. Aktokol*,
   287 F. Supp. 2d 37 (D.D.C. 2003) .................................................................................. 11

*Doe I v. State of Israel*,
   400 F. Supp. 2d 89 (D.D.C. 2005) .................................................................................. 12

*\*EIG Energy Fund XIV, LP v. Petroleo Brasileiro S.A.*,
   246 F. Supp. 3d 52 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018) ................ 3, 6, 7

*Elsevier, Inc. v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015) ............................................................................... 10

*Flag Co. v. Maynard*,
   376 F. Supp. 2d 849 (N.D. Ill. 2005) ................................................................................ 4

*Galloway v. Martorello*,
   No. 19-CV-314, 2023 WL 5183204 (E.D. Va. Aug. 11, 2023) ............................... 4, 7, 8

*Gligorov v. Nation of Brunei*,
   No. 21-CV-1773, 2023 WL 1438326 (D.D.C. Jan. 31, 2023),
   *amended*, No. 21-CV-1773, 2023 WL 11959816 (D.D.C. Feb. 3, 2023) ....................... 10

*Hourani v. Mirtchev*,
   796 F.3d 1 (D.C. Cir. 2015) ........................................................................................... 13

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   245 F. Supp. 2d 280 (D. Mass. 2003) .............................................................................. 8

*MCM Partners, Inc. v. Andrews-Bartlett Assocs., Inc.*,
    62 F.3d 967 (7th Cir. 1995) .............................................................................................. 12, 13

*Nuevos Destinos, LLC v. Peck*,
    No. 15-CV-1846, 2019 WL 78780 (D.D.C. Jan. 2, 2019) ................................................. 9

*Oceanic Expl. Co. v. ConocoPhillips, Inc.*,
    No. 04-CV-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) ........................................ 9

*Ofisi v. Al Shamal Islamic Bank*,
    No. 15-CV-2010, 2019 WL 1255096 (D.D.C. Mar. 19, 2019) ........................................ 4

*Ouiss v. Al Saud*,
    No. 20-CV-25022, 2022 WL 1311114 (S.D. Fla. Mar. 29, 2022) ................................... 4

*Peters v. Estate of Muammar Mohammad Abu Minyar Qadhafi*,
    No. 21-CV-516, 2024 WL 4603907 (D.D.C. Aug. 28, 2004) ....................................... 4, 6

*In re Platinum & Palladium Antitrust Litig.*,
    No. 14-CV-9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .................................... 4

*Rudersdal v. Harris*,
    No. 18-CV-11072, 2022 WL 263268 (S.D.N.Y. Jan. 28, 2022) ................................. 4, 5

*\*RSM Prod. Corp. v. Freshfields Bruskhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ..................................................................................... 12

*\*Salinas v. United States*,
    522 U.S. 52 (1997) .................................................................................................... 12, 13

*Schrier v. Qatar Islamic Bank*,
    632 F. Supp. 3d 1335 (S.D. Fla. 2022) .................................................................... 4, 5, 6

*\*Sotloff v. Qatar Charity*,
    674 F. Supp. 3d 1279 (S.D. Fla. 2023) ......................................................................... 4, 6

*United States v. Neapolitan*,
    791 F.2d 489 (7th Cir. 1986) .......................................................................................... 12

*United States v. Philip Morris USA, Inc.*,
    396 F.3d 1190 (D.C. Cir. 2005) ....................................................................................... 9

*United States v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part and vacated in part on other
    grounds by* 566 F.3d 1095 (D.C. Cir. 2009) ................................................................. 13

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................................................... 3

*Yi Ti Shao v. Roberts*,
    No. 18-CV-1233, 2019 WL 249855 (D.D.C. Jan. 17, 2019) ............................................ 8

*Youming Jin v. Ministry of State Sec.*,
    335 F. Supp. 2d 72 (D.D.C. 2004) ................................................................................. 8

## Rules and Regulations

18 U.S.C. § 1965(b) ................................................................................................... 9, 11

D.C. Code § 13-423 ............................................................................................................ 5

Fed. R. Civ. P. 4(k), advisory committee's notes to 1993 amendments .................................. 5, 6

*Fed. R. Civ. P. 4(k)(1) ................................................................................................. 2, 9

*Fed. R. Civ. P. 4(k)(2) ............................................................................................. *passim*

Defendant Sylvain Besson submits this Memorandum of Law in Further Support of his Motion to Dismiss the Amended Complaint, ECF No. 85 ("Besson Br.").[1]

## INTRODUCTION

Plaintiffs' nearly 100-page opposition to Defendants' motions to dismiss fails to explain how the Amended Complaint alleges sufficient facts to justify haling Sylvain Besson—a Swiss resident, citizen, and journalist—into a U.S. court to defend against Plaintiffs' allegations that he engaged in a conspiracy to harm Plaintiffs' oil interests. Ignoring that Mr. Besson has no place in this litigation, Plaintiffs tie themselves in knots trying to fit Mr. Besson's Swiss residency and a single article published in a Swiss newspaper about a European resident and company, into U.S. jurisdictional, constitutional, and conspiracy principles. Each of Plaintiffs' novel theories should be rejected outright, and Mr. Besson should be dismissed from this case with prejudice.

*First*, Plaintiffs' argument that this Court has personal jurisdiction over Mr. Besson through a combination of Federal Rule of Civil Procedure 4(k)(2) and conspiratorial jurisdiction fails as a matter of law and fact. No Circuit, including this one, and no court within this Circuit, has accepted such a theory. And for good reason—it is wrong. Nevertheless, even if this Court was inclined to accept such an expansion of Rule 4(k)(2), the Amended Complaint fails to allege that Mr. Besson knowingly joined a conspiracy with a principal objective directed toward the United States, or that he was aware of any purposeful acts that were aimed at the United States, much less this District.

*Second*, the service statute under the Racketeer Influenced and Corrupt Organizations Act ("RICO") does not confer personal jurisdiction over foreign defendants who were not personally

---

[1] All capitalized terms not otherwise defined herein carry with them the same meaning as in Mr. Besson's Motion to Dismiss.

served in the United States. To hold otherwise would be flatly inconsistent with the plain language of the statute. And it would have the dual deleterious effects of impermissibly pulling anyone into a U.S. court regardless of their connections (or lack thereof) to the United States and disincentivizing judicial economy.

*Finally*, even if this Court were to accept Plaintiffs' unmoored theories of personal jurisdiction, the Amended Complaint fails to allege that Mr. Besson knowingly agreed to join a RICO conspiracy.

Accordingly, this Court should dismiss the claim against Mr. Besson with prejudice.

## ARGUMENT

**I.     THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER MR. BESSON**

Plaintiffs seek to drag into a U.S. court a Swiss citizen who acted in Switzerland by publishing an article in a prominent Swiss newspaper in one of Switzerland's national languages (French) through two flawed theories of personal jurisdiction.

*First*, Plaintiffs endeavor to combine a conspiracy theory of personal jurisdiction with Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)") to assert jurisdiction over a foreign defendant who, as Plaintiffs admit, had no personal connection with the United States. And even if this Court were to be the first in this Circuit to recognize personal jurisdiction on these grounds, Plaintiffs have not properly pleaded conspiratorial jurisdiction with respect to Mr. Besson.

*Second*, the plain language of the RICO statute and Rule 4(k)(1) forecloses Plaintiffs' argument that waiving service of process automatically bestows U.S. jurisdiction on foreign defendants even without any connection to the United States.

2

### A. Plaintiffs Do Not Have Specific Personal Jurisdiction Over Mr. Besson Under Rule 4(k)(2)

Plaintiffs appear to concede that this Court does not have personal jurisdiction over Mr. Besson under either Rule 4(k)(2) or a conspiracy theory of personal jurisdiction standing alone. Opp. 30.[2] Indeed, the Amended Complaint contains no allegations that Mr. Besson purposefully availed himself of the United States under Rule 4(k)(2). Besson Br. 8–14. And Plaintiffs do not argue that Mr. Besson can be haled into this Court under the District of Columbia's long-arm statute alone, which—at least historically[3]—has permitted personal jurisdiction where the defendant was a member of a plausibly-pleaded conspiracy with ties to the District. Besson Br. 9 n.7 (citing D.C. Code § 13-423). Instead, Plaintiffs' position is that because Mr. Besson—a foreign defendant who did not direct any conduct toward the United States—was allegedly a member of a RICO conspiracy, and because another member of the alleged conspiracy had some ties to the forum, Mr. Besson may be forced to litigate in this Court. Opp. 30. Plaintiffs' theory thus requires the Court to find that (1) this Circuit's jurisprudence permits a theory of personal jurisdiction under Rule 4(k)(2) that reaches all members of a purported international conspiracy—including those, like Mr. Besson, who have not purposely directed any conduct at the United States, (2) Mr. Besson knowingly joined a conspiracy, the principal object of which aimed at the United States, and (3) Mr. Besson knew that his alleged "co-conspirator[s] were carrying out acts in furtherance of the conspiracy in the forum." *EIG Energy Fund XIV, LP v.*

---

[2] "Opp." refers to Plaintiffs' Omnibus Memorandum of Points and Authorities in Opposition to Defendants' Motions to Dismiss, filed October 7, 2024, ECF No. 87.

[3] Some courts have called into question whether any conspiratorial jurisdiction remains after the Supreme Court's holding in *Walden v. Fiore*, which held that a defendant's relationship with the forum "must arise out of contacts that the defendant himself creates with the forum." 571 U.S. 277, 284 (2014) (quotation omitted); *see Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 185–86 (D.D.C. 2018) (questioning whether "any conspiratorial jurisdiction survives *Walden*").

3

*Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 91 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018). Plaintiffs have failed to show all three.

*First*, courts, including in this Circuit, have largely rejected asserting personal jurisdiction under a combination of Rule 4(k)(2) and a conspiracy theory. *See, e.g.*, *Ofisi v. Al Shamal Islamic Bank*, No. 15-CV-2010, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019) (collecting cases); *Aljabri v. Saud*, No. 20-CV-2146, 2022 WL 4598519, at *8 n.4 (D.D.C. Sept. 30, 2022), *vacated on other grounds by* 106 F.4th 1157 (D.C. Cir. 2024); *Peters v. Est. of Muammar Mohammad Abu Minyar Qadhafi*, No. 21-CV-516, 2024 WL 4603907, at *9 & n.6 (D.D.C. Aug. 28, 2004) (rejecting theory of personal jurisdiction under Rule 4(k)(2) and conspiracy) (collecting cases); *see also, e.g.*, *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1366 (S.D. Fla. 2022) (collecting cases); *Ouiss v. Al Saud*, No. 20-CV-25022, 2022 WL 1311114, at *19, 21, 22, 25 (S.D. Fla. Mar. 29, 2022); *In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391, 2017 WL 1169626, at *49 (S.D.N.Y. Mar. 28, 2017); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015). Plaintiffs' efforts to scour the country for a handful cases from out-of-circuit jurisdictions that have to some degree accepted the combination of these two theories (Opp. 30) do not overcome the weight of authority, including persuasive authority in this District.[4] And, at least as importantly, Plaintiffs' attempt to leverage

---

[4] Plaintiffs' assertion that "[r]ecent opinions have given fuller treatment to [the conspiracy jurisdiction issue] and held that conspiracy jurisdiction *is* appropriate under Rule 4(k)(2)" (Opp. 30) is a red herring. Unlike Plaintiffs' alleged conspiracy, *Galloway v. Martorello*, No. 19-CV-314, 2023 WL 5183204 (E.D. Va. Aug. 11, 2023) and *Sotloff v. Qatar Charity*, 674 F. Supp. 3d 1279 (S.D. Fla. 2023) each involved alleged conspiracies that were explicitly directed at the United States. *See Galloway*, 2023 WL 5183204, at *10–11 (discussing alleged conspiracy involving U.S.-based loans); *Sotloff*, 674 F. Supp. 3d at 1308–11 (discussing execution involving video published in United States stating violence was targeted at the United States). And neither *Flag Co. v. Maynard* nor *Rudersdal v. Harris* have any application here. In *Flag Co.*, each of the foreign defendants had directly engaged in acts in the United States. 376 F. Supp. 2d 849, 855–

4

Rule 4(k)(2) and conspiracy jurisdiction to advocate for this novel theory of personal jurisdiction would be, simply put, bad law.

That many courts have rejected finding personal jurisdiction under Rule 4(k)(2) and conspiratorial jurisdiction makes sense and comports with the Rule's plain language, the advisory committee's guidance, and long-held principles of due process.

The plain language of Rule 4(k)(2) confirms that it cannot be applied in a conspiracy context.  Rule 4(k)(2) refers specifically to personal jurisdiction of a "defendant," and does not include language—such as that included in many states' long-arm statutes, including the District of Columbia's—referring to defendants' agents.  *Compare* D.C. Code § 13-423 (exercising personal jurisdiction "over a person, who acts directly or by an agent" in the District of Columbia), *with* Rule 4(k)(2) (permitting personal jurisdiction over "a defendant" when not subject to any state's jurisdiction and if consistent with the constitution); *see also Schrier*, 632 F. Supp. 3d at 1367 (holding Rule 4(k)(2) cannot be applied to a conspiracy because, unlike the language of Florida's long-arm statute, it refers only to "defendant").  If Congress had intended to extend Rule 4(k)(2) to "agents," "it could have so legislated . . . . It did not do so." *Aluminum Warehousing*, 90 F. Supp. 3d at 227.

Consistent with its plain language, when Rule 4(k) was enacted, the advisory committee notes to the Federal Rules of Civil Procedure cautioned that it should be a "narrow extension of the federal reach" that "remain[s]" confined by "constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States."  Fed. R. Civ. P.

---

56 (N.D. Ill. 2005).  In *Rudersdal*, the Court rejected the application of conspiracy jurisdiction, noting the plaintiffs had actually pleaded two separate conspiracies, and the U.S.-based acts from the U.S.-based conspiracy could not be imputed to defendants in the non-U.S. based conspiracy. No. 18-CV-11072, 2022 WL 263568, at *12 (S.D.N.Y. Jan. 28, 2022).

5

4(k), advisory committee's note to 1993 amendments.  In advising courts to exercise Rule 4(k) with "great care and reserve," the advisory committee counseled that "district court[s] should be especially scrupulous to protect aliens who reside in a foreign country from forum selections so onerous that injustice could result."  *Id.*; *see Peters*, 2024 WL 4603907, at *5.  Dragging Mr. Besson into a U.S. court because others allegedly directed their conduct at the United States—something of which he had no knowledge—would violate the "Supreme Court's clear guidance on what due process in this context requires," *Schrier*, 632 F. Supp. 3d at 1367, and should, for that reason, be rejected.

      *Second*, even if conspiracy jurisdiction under Rule 4(k)(2) is available, Plaintiffs have failed to plead that this Court has personal jurisdiction over Mr. Besson under a conspiracy theory.  To plead conspiratorial jurisdiction, Plaintiffs would need to show:  (1) a conspiracy with an "act or effect in the forum" that is the "principal object of the conspiracy," *Sotloff*, 674 F. Supp. 3d at 1312 (quoting *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 789–90 (11th Cir. 2014)); (2) that Mr. Besson should have "reasonably anticipate[d]" being "haled into court in the forum as a result of" alleged co-conspirators' contacts with the forum, *id*. (citing *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 125 (2d Cir. 2021)); and, relatedly, (3) that Mr. Besson specifically knew of an alleged co-conspirator's overt acts within the forum, *see Cockrum*, 319 F. Supp. 3d at 185 (holding conspiratorial jurisdiction requires "(1) a conspiracy, (2) in which defendant participated, and (3) co-conspirator's overt act within the forum"); *EIG Energy Fund XIV*, 246 F. Supp. 3d at 90 (holding defendant must be aware of alleged co-conspirator's overt act within the forum).  They have failed to so plead.

6

Plaintiffs reference a "conspiracy" and "an enterprise" throughout the Amended Complaint and their Opposition, but it is not at all clear what the actual object of that conspiracy was or that it was directed at the United States. Indeed, the conspiracy they allege did not have the "primary object" of damaging Plaintiffs' interests in the United States specifically. *See Sotloff*, 674 F. Supp. 3d at 1307. As alleged, the objects of the purported conspiracy appear to be damaging Nada and Lord Energy's reputation worldwide to support the UAE's ongoing conflict with Qatar and reducing competition for the UAE's exports into the Asian oil market. AC ¶¶ 2–12; Alp. Br. 2, 11–12. Each of the U.S. connections Plaintiffs identify (such as Lord Energy's U.S. subsidiary, Nada's citizenship, and publication of articles by other authors on U.S. websites) are, at best, incidental to the alleged conspiracy and thus insufficient to form the nexus between the alleged conspiracy and the forum. *See Galloway*, 2023 WL 5183204, at *4 (holding that to exercise specific personal jurisdiction, plaintiffs must allege that their "claims arise out of those activities directed at the" forum) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)).

Moreover, there are no credible allegations that Mr. Besson had any reason to anticipate being hauled into a U.S. court or that he knowingly joined a conspiracy that had as its "principal object" an effect in the United States. *See Galloway*, 2023 WL 5183204, at *11 (quoting *Sotloff*, 2023 WL 3721683, at *18). Indeed, there are no allegations that Mr. Besson "*knew* his co-conspirator[s] w[ere] carrying out acts in furtherance of the conspiracy *in the forum*." *EIG Energy Fund XIV*, 246 F. Supp. 3d at 90 (emphasis in original) (finding no personal jurisdiction existed where plaintiffs failed to allege defendants had any knowledge of alleged conspiratorial acts in the District of Columbia); *see Cockrum*, 319 F. Supp. 3d at 185–86 (holding "a plaintiff pursuing [a theory of conspiratorial jurisdiction] must allege that the defendant knew of the co-

7

conspirator's acts in the forum"); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78–79 (D.D.C. 2004) (similar).  The Amended Complaint nowhere alleges:  that Mr. Besson disseminated his January 2018 article to other authors or publications in the United States; that he knew that Alp and its employees were purportedly directing a dark public relations campaign in the United States through other authors and publications (a theory that fails on its own merits, *see* Alp Br. 10–11); or that he knew Alp was also communicating with Lorenzo Vidino, AC ¶¶ 40–41.  To attribute the "unilateral activity of another party"—other Defendants who purportedly directed some conduct to U.S.-based websites with an intent to harm Plaintiffs—to Mr. Besson would be so "random, fortuitous, or attenuated" that it would violate due process.  *See Galloway*, 2023 WL 5183204, at *5 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *see also Yi Ti Shao v. Roberts*, No. 18-CV-1233, 2019 WL 249855, at *7 (D.D.C. Jan. 17, 2019) (quoting *Youming Jin*, 335 F. Supp. 2d at 80 n.5) ("[T]he minimum requirements of due process cannot be 'sidestepped under the guise of conspiracy jurisdiction.'"); *In re Lupron Mktg. & Sales Pracs. Litig.*, 245 F. Supp. 2d 280, 294 (D. Mass. 2003) ("[D]ue process requires more than a bare allegation of the existence of a conspiracy.").

Plaintiffs "are trying to sidestep any procedural barriers to their bringing suit, in a thinly-veiled effort to obtain discovery on the merits of their case." *Cockrum*, 319 F. Supp. 3d at 189.  Under Plaintiffs' theory, so long as a plaintiff alleges a conspiracy with one co-conspirator having ties to the forum, and even without alleging the conspiracy's primary object was directed at the United States or any connection between each defendant and the United States as a whole, it could pull in any defendant from anywhere in the world into a U.S. court.  This would force foreign defendants to proceed through a lengthy and likely costly discovery process, only to be

8

dismissed once the plaintiff's conclusory allegations were proven false. This cannot be the standard and should be rejected.

**B.     This Court Does Not Have Specific Personal Jurisdiction Under Rule 4(k)(1)**

Plaintiffs next assert that because Mr. Besson waived service of the complaint rather than forcing Plaintiffs to serve him for a second time through the Hague Convention, he has consented to this Court's jurisdiction. Opp. 32–34. This argument not only runs afoul of the Federal Rules' plain language but also guts the heart of due process protections and encourages a more costly, inefficient judicial system.

18 U.S.C. § 1965(b), by way of Rule 4(k)(1)(C), may confer personal jurisdiction over a defendant "residing in any other district" if the party is served in the United States. The first step of granting personal jurisdiction under the statute, though, which Plaintiffs flatly disregard, is that the defendant must "resid[e]" in another "district"—indicating that § 1965(b) can only bring an out-of-state defendant into a district's jurisdiction if the defendant *resides* in another judicial *district*, not another country altogether. Plaintiffs have not offered an alternative reading of this plain language, and any alternative interpretation of "reside" or "district" would violate the plain meaning canon of statutory construction. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005). And notably, Plaintiffs do not cite a single case for the proposition that "residing in any other district" is the same thing as a foreign defendant residing in another country—likely because they are plainly different.[5]

---

[5] Instead of providing in-Circuit authority in favor of their erroneous interpretation, Plaintiffs attempt to distinguish the cases Mr. Besson cited in his moving brief. Opp. 33. But both favor Mr. Besson's interpretation of the statute. In *Nuevos Destinos, LLC v. Peck*, the court plainly stated that "[t]he RICO statute . . . cannot be used to obtain personal jurisdiction over [foreign] defendants because it only provides for nationwide service of process" of "*domestic defendants*." No. 15-CV-1846, 2019 WL 78780, at *12 (D.D.C. Jan. 2, 2019) (emphasis added); *see also Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. 04-CV-332, 2006 WL 2711527, at *12 (D.D.C.

9

Even if Plaintiffs could clear the hurdle of showing that the plain language of § 1965(b) could apply to foreign defendants, "[m]erely invoking the statute does not confer personal jurisdiction, and the court must still make its determination under the D.C. long-arm statute and the Constitution." *Gligorov v. Nation of Brunei*, No. 21-CV-1773, 2023 WL 1438326, at *3 (D.D.C. Jan. 31, 2023), *amended*, No. 21-CV-1773, 2023 WL 11959816 (D.D.C. Feb. 3, 2023); *see Collingsworth v. Drummond Co. Inc.*, No. 19-CV-1263, 2020 WL 2800612, at *7 n.4 (D.D.C. May 29, 2020) (Jackson, J.), *aff'd*, 839 F. App'x 567 (D.C. Cir. 2021). Plaintiffs have not shown that Mr. Besson was a knowing member of the alleged RICO conspiracy, *see infra* Section II; exerting personal jurisdiction over Mr. Besson would violate the constitution, Besson Br. 9–12;[6] and "the ends of justice" do not require haling Besson into a "far flung for[um]." *Gligorov*, 2023 WL 1438326, at *3 (quoting *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1100 (D.C. Cir. 2008)), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021)). Most of the defendants, including Mr. Besson, are located overseas; the "acts . . . giving ris[e] to the claims" occurred overseas; witnesses are overseas; and

---

Sept. 21, 2006) (same). And in *Elsevier, Inc. v. Grossman*, the court held that personal jurisdiction did not exist in part because "the parties stipulated as to the service of the Summons and Complaint on Defendants without prejudice to any of [the Defendants'] right to challenge this Court's personal jurisdiction over them." 77 F. Supp. 3d 331, 343 n.7 (S.D.N.Y. 2015) (quotation omitted). The parties did the exact same thing here: in the Consent Motion to Vacate the Entry of Default, the parties jointly recognized that Mr. Besson would seek to assert "defenses to this litigation, including but not limited to lack of personal jurisdiction," and Mr. Besson stated that he did "not waive any defenses to the complaint by filing [a motion to vacate the entry of default] or appearing to move to dismiss the complaint." ECF No. 44 at 4 & n.1.

[6] The sole case Plaintiffs cite in their Opposition on this point proves that this constitutional requirement is absent here. In *Bayshore Capital Advisors, LLC v. Creative Wealth Media Finance Corp.*, the Court held that some of the defendants had minimum contacts with the United States because they had entered into agreements with U.S.-based companies, one was the co-founder of a U.S.-based company, and another lived in the United States. 667 F. Supp. 3d 83, 120–22 (S.D.N.Y. 2023). The court, however, declined to exercise personal jurisdiction where the complaint failed to allege that two entities who, even though they were associated with U.S.-based companies, took any action directed at the United States. *Id.*

10

most documentary evidence is likely located overseas. *Crenshaw v. Aktokol*, 287 F. Supp. 2d 37, 42 (D.D.C. 2003) (considering "the location of the parties, witnesses, records, and acts or omissions giving ris[e] to the claims" in "ends of justice" analysis) (collecting cases).

Moreover, the practical implications of Plaintiffs' counter-textual interpretation of the statutory language are significant. If a plaintiff were permitted to drag a foreign defendant into a U.S. court simply because U.S. counsel waived service on his behalf, the due process protections that guardrail personal jurisdiction would be substantially diminished. Foreign litigants would be discouraged from engaging U.S. counsel to advise them and streamline litigation. And U.S. counsel would be discouraged from making litigation more efficient through reaching commonsense agreements with plaintiffs to avoid the lengthy and costly process of serving defendants through the Hague Convention.[7] Such a holding would run counter to basic principles of the U.S. judicial system and the constitution, and this Court should reject it.

## II. PLAINTIFFS FAILED TO PLAUSIBLY PLEAD THAT MR. BESSON KNOWINGLY JOINED A RICO CONSPIRACY

Plaintiffs' Opposition does not cure the Amended Complaint's failure to plausibly allege that Mr. Besson knowingly joined a RICO conspiracy. While Plaintiffs correctly articulate Mr. Besson's argument—"that the RICO conspiracy claim against him should be dismissed because Plaintiffs fail to allege that he knew about or agreed to further Defendants' RICO scheme" (Opp. 64)—they fail to actually offer arguments against it.

---

[7] Plaintiffs attempted to serve the summons and original complaint (which did not include a personal jurisdiction theory pursuant to 18 U.S.C. § 1965(b)) on Mr. Besson through the Hague Convention but served the wrong Sylvain Besson. ECF No. 44 at 3–4. By the time the improper entry of default against Mr. Besson was lifted, most of the other Defendants had already been served and appeared in the case. To avoid being placed on a different timeline than the other Defendants, Mr. Besson, through counsel, opted to save Plaintiffs the trouble of attempting service for a second time through the Hague Convention.

*First*, Plaintiffs do not address Mr. Besson's argument (Besson Br. 15–18) that the Amended Complaint fails to allege that he "knew of and agreed to further [alleged] conspiracy," as the D.C. Circuit requires. *RSM Prod. Corp. v. Freshfields Bruskhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012); *cf. Salinas v. United States*, 522 U.S. 52, 65 (1997) (upholding conviction where defendant "knew about and agreed to facilitate the scheme"). There still are no allegations supporting the proposition that Mr. Besson had any knowledge of, or agreed to, "the essential nature of scope of the [RICO] enterprise." Besson Br. 15 (quoting *RSM Prod. Corp.*, 682 F.3d at 1051). In fact, the only allegations to which Plaintiffs point are internal Alp communications, generic texts without context, and meetings between Mr. Besson and two Alp employees. Opp. 65–66. But the naked allegation that "*Alp* communications" described Mr. Besson as "'part of [Alp's] extensive network' who could 'conduct confidential actions' and 'strike at Alp's targets using viral com.,'" *id.* (quoting AC ¶ 122) (emphasis added), says nothing about whether or how *Mr. Besson* allegedly knew about this alleged "extensive network," his "subjective agreement" to join it, *Doe I v. State of Israel*, 400 F. Supp. 2d 89, 120 (D.D.C. 2005), or of the enterprise's "essential nature," *RSM Prod. Corp.*, 682 F.3d at 1051.

*Second*, and similarly, Plaintiffs fail to point to any allegations in the Amended Complaint suggesting that Mr. Besson knew about the alleged predicate acts in which the purported enterprise sought to engage. As Plaintiffs' own authority indicates,[8] Mr. Besson must

---

[8] Plaintiffs cite to no in-circuit authority in arguing they have plausibly pleaded a claim for conspiracy to violate RICO against Mr. Besson, relying only on the Seventh Circuit. Opp. 64. In any event, both *MCM Partners v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967 (7th Cir. 1995) and *United States v. Neapolitan*, 791 F.2d 489 (7th Cir. 1986) support dismissing Mr. Besson from this case, and are readily distinguishable. *MCM Partners* held that the plaintiff properly pleaded two defendants knew about the attempts to commit at least two predicate acts on the conspiracy's behalf, focusing on whether the defendants were coerced, not whether they knew about the conduct at all. 62 F.3d at 979–80. The court in *Neapolitan* conditioned criminal

have "agree[d] to the commission of [at least] two predicate acts on behalf of the conspiracy," even if he did not agree to commit them himself. *MCM Partners*, 62 F.3d at 979–80 (quotation and citation omitted) (cited in Opp. 64); *see Salinas*, 522 U.S. at 65 (holding evidence showed defendant could be convicted of conspiracy to commit RICO because he knew that a co-conspirator committed at least two acts of racketeering activity); *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 903 (D.D.C. 2006) (noting defendants must "agree to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise") (quoting *United States v. Nguyen*, 255 F.3d 1335, 1341 (11th Cir. 2001)), *aff'd in part & vacated in part on other grounds by* 566 F.3d 1095 (D.C. Cir. 2009). But neither the Amended Complaint nor the Opposition contend that Mr. Besson knew about any alleged efforts to engage in the underlying predicate acts of wire and bank fraud. Opp. 65. Instead, Plaintiffs' Opposition makes clear that at most, Mr. Besson allegedly published "false accusation[s]" about Nada and Lord Energy after having received notes from Alp,[9] Opp. 65, which, if proven, could perhaps nominally undergird a claim for defamation but does not support a finding that Mr. Besson knew about the enterprise's alleged efforts to engage in wire or bank fraud. And as set out in Mr. Besson's opening brief, defamation cannot serve as a RICO predicate act. *See Hourani v. Mirtchev*, 796

---

liability under the RICO conspiracy statute on the defendant being "intimately involved in the conspiracy," and held that the defendant's conviction could be upheld because he was present for (and thus knew about) at least one of the predicate acts. 791 F.2d at 498, 502. The Amended Complaint does not allege that Mr. Besson knew about the attempted or completed predicate acts, much less that he was present for them.

[9] Plaintiffs opine that the "article was based on notes that Alp gave to Besson, not his own independent reporting." Opp. 65 (citing AC ¶ 120). But the Amended Complaint does not allege that that Mr. Besson did not do any of his own reporting before publishing his January 5, 2018 article.

13

F.3d 1, 10 n.3 (D.C. Cir. 2015) (citing 18 U.S.C. § 1961(1)(A)) (holding defamation is not a RICO predicate act).

Ultimately, Plaintiffs have failed to set forth specific facts alleging Mr. Besson's knowledge of or role in the conspiracy sufficient to avoid dismissal. There continues to be no allegations that Mr. Besson had any knowledge of an enterprise, its purported scheme, or an anticipated pattern of racketeering. There continues to be no allegations that Mr. Besson's article had any adverse effect on Plaintiffs (beyond Plaintiffs' representation in their brief, devoid of support in their Amended Complaint, that Mr. Besson's article lent the enterprise "a veneer of legitimacy," Opp. 65). There continues to be no allegations that Mr. Besson sent his article to other authors or publications. There continues to be no allegations that Mr. Besson had knowledge of or engaged in the purported bank and wire fraud. *See* Besson Br. 16, 18.

Accordingly, even assuming that Plaintiffs could carry their burden to show that this Court has specific personal jurisdiction over Mr. Besson (and they cannot), the Amended Complaint should be dismissed against Mr. Besson for the additional and independent reason that Plaintiffs failed to plead that Mr. Besson knew of and agreed to join the conspiratorial enterprise alleged here.[10]

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Mr. Besson's moving brief, Mr. Besson respectfully requests that this Court dismiss with prejudice the claim against him.

---

[10] Mr. Besson also maintains that Plaintiffs' conspiracy to commit RICO claim fails for the additional and independent reason that their substantive RICO claim fails as a matter of law. Besson Br. 18–19.

Dated: November 8, 2024
      Washington, D.C.

Respectfully submitted,

By:   <u>/s/ *Michael O'Leary*</u>
Michael O'Leary (D.C. Bar No. 1014610)
HOLLAND & HART LLP
505 9th St. NW, Suite 700
Washington, DC 20004
Tel.: (202) 654-6922
MJOleary@hollandhart.com

Nicholas J. Lewin (*pro hac vice*)
Molly K. Webster (*pro hac vice*)
KRIEGER LEWIN LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
Tel.: (212) 390-9550
nick.lewin@kriegerlewin.com
molly.webster@kriegerlewin.com

*Counsel for Sylvain Besson*