# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAZIM NADA, *et al.*, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> THE UNITED ARAB EMIRATES, *et al.*, <br><br> *Defendants*. | Case No. 24-cv-206-ABJ |

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT LORENZO VIDINO'S MOTION TO DISMISS AMENDED COMPLAINT**

Matthew D. McGill (D.C. Bar #481430)
Nathaniel J. Tisa (D.C. Bar #90006243)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
T: (202) 887-3680
F: (202) 530-9662
mmcgill@gibsondunn.com
ntisa@gibsondunn.com

*Counsel for Lorenzo Vidino*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.   Dr. Vidino's Statements Are Protected By The First Amendment.................................... 3

      A.   The First Amendment applies to RICO claims based on protected activities............... 3

      B.   Nada forfeited any other response to dismissal on First Amendment grounds............. 6

   II.   Nada Fails To Allege That Dr. Vidino Knowingly Joined A RICO Conspiracy. ................ 7

   III.   Alternatively, Nada Cannot Maintain A RICO Conspiracy Claim Against Dr. Vidino Because Nada Cannot Show A Substantive RICO Violation........................................... 11

      A.   Nada does not allege a RICO predicate or pattern of racketeering activity. ................ 11

         i.   Nada does not allege wire fraud............................................................................. 12

         ii.   Nada cannot allege a RICO claim based on bank fraud. ........................................ 14

      B.   Nada does not allege a domestic injury....................................................................... 15

      C.   Nada does not allege proximate cause under RICO's heightened standard. ............... 17

   IV.   Nada's RICO Claims Are Barred By The Statute Of Limitations. ................................... 19

      A.   Nada does not allege the affirmative conduct necessary to toll RICO's statute of limitations for fraudulent concealment. ....................................................................... 20

      B.   Nada's actual notice defeats his fraudulent-concealment theory. ............................... 22

CONCLUSION.................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Nakhle,*
   2023 WL 8004712 (N.D. Ohio Nov. 17, 2023) ................................................................. 15

*Am. Biocare, Inc. v. Howard & Howard Att'ys, PLLC,*
   2016 WL 5661583 (E.D. Mich. Sept. 30, 2016) ......................................................... 14, 15

*Amobi v. D.C. Dep't of Corr.,*
   755 F.3d 980 (D.C. Cir. 2014) ......................................................................................... 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................. 10, 13

*Askanase v. Fatjo,*
   828 F. Supp. 461 (S.D. Tex. 1993) ................................................................................. 17

*Barlow v. McLeod,*
   666 F. Supp. 222 (D.D.C. 1986) ....................................................................................... 7

*Bates v. Nw. Hum. Servs., Inc.,*
   466 F. Supp. 2d 69 (D.D.C. 2006) ................................................................................... 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................... 10

*Best Deals on TV, Inc. v. Naveed,*
   2007 WL 2825652 (N.D. Cal. Sept. 26, 2007) ................................................................. 15

*Bridge v. Phoenix Bond & Indem. Co.,*
   553 U.S. 639 (2008) ............................................................................................ 14, 18, 19

*Bridges v. Metabolife Int'l, Inc.,*
   119 F. App'x 660 (5th Cir. 2005) ..................................................................................... 21

*Carter v. Harvey,*
   525 S.W.3d 420 (Tex. Ct. App. 2017) .............................................................................. 16

*Cheeks v. Ft. Myer Constr. Corp.,*
   216 F. Supp. 3d 146 (D.D.C. 2016) ................................................................................... 8

*City of Oakland v. Wells Fargo & Co.,*
   14 F.4th 1030 (9th Cir. 2021) (en banc) ......................................................................... 17

*Confederate Mem'l Ass'n, Inc. v. Hines*,
   995 F.2d 295 (D.C. Cir. 1993) ........................................................................... 3

*Conwood Co. v. U.S. Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002) ............................................................................ 13

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
   398 F.3d 666 (D.C. Cir. 2005) ........................................................................... 5

*Ctr. for Immigr. Stud. v. Cohen*,
   410 F. Supp. 3d 183 (D.D.C. 2019) ........................................................ 12, 13, 14

*De Laire v. Voris*,
   2023 WL 5096150 (D.N.H. Aug. 9, 2023) ......................................................... 13

*Dimas v. Vanderbilt Mortg. & Fin., Inc.*,
   2010 WL 3342216 (S.D. Tex. Aug. 25, 2010) .................................................... 15

*Dubai Petrol. Co. v. Kazi*,
   12 S.W.3d 71 (Tex. 2000) ................................................................................. 17

*Duffy v. Bank of Am., N.A.*,
   13 F. Supp. 3d 57 (D.D.C. 2014) ........................................................................ 6

*Dummar v. Lummis*,
   543 F.3d 614 (10th Cir. 2008) .......................................................................... 21

*Ewing v. FBI*,
   2011 WL 6034614 (E.D.N.C. Dec. 5, 2011) ...................................................... 15

*Farah v. Esquire Mag.*,
   736 F.3d 528 (D.C. Cir. 2013) ............................................................................ 4

*Feld Ent., Inc. v. Am. Soc'y for Prevention of Cruelty to Animals*,
   873 F. Supp. 2d 288 (D.D.C. 2012) ......................................................... 1, 5, 19

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) .......................................................................... 19

*Fitzgerald v. Seamans*,
   384 F. Supp. 688 (D.D.C. 1974) ....................................................................... 23

*Gomez v. Pasadena Health Care Mgmt., Inc.*,
   246 S.W.3d 306 (Tex. Ct. App. 2008) ............................................................... 17

*Greenpeace, Inc. v. Dow Chem. Co.*,
   808 F. Supp. 2d 262 (D.D.C. 2011) ................................................................... 11

*Hargraves v. Cap. City Mortg. Corp.*,
140 F. Supp. 2d 7 (D.D.C. 2000)......................................................................22

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)........................................................................................13

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010)..........................................................................2, 17, 18, 19

*Herbert v. Lando*,
441 U.S. 153 (1979).......................................................................................13

*Herrick v. Liberty League Int'l*,
2008 WL 2230702 (S.D. Ohio May 28, 2008) ......................................................15

*Hill v. Opus Corp.*,
841 F. Supp. 2d 1070 (C.D. Cal. 2011) ...........................................................2, 15

*Hollander v. Pressreader, Inc.*,
2020 WL 2836189 (S.D.N.Y. May 30, 2020) ...................................................6

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992).....................................................................................17, 18

*Honorable v. Easy Life Real Estate Sys., Inc.*,
182 F.R.D. 553 (N.D. Ill. 1998).......................................................................15

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
238 F. Supp. 2d 174 (D.D.C. 2002)...................................................................6

*Hourani v. Mirtchev*,
796 F.3d 1 (D.C. Cir. 2015).............................................................................12

*Hourani v. Mirtchev*,
943 F. Supp. 2d 159 (D.D.C. 2013) ...............................................................3, 17

*Hunter v. Ft. Worth Cap. Corp.*,
620 S.W.2d 547 (Tex. 1981)........................................................................16, 17

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir. 2016)...........................................................................4

*Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Church Ministries, Inc.*,
223 F. Supp. 3d 1 (D.D.C. 2016)....................................................................15

*Kinsley v. Nat'l Better Living Ass'n, Inc.*,
2014 WL 4084517 (N.D. W. Va. Aug. 19, 2014)...............................................15

*Libertad v. Welch*,
    53 F.3d 428 (1st Cir. 1995) .................................................................................4

*Marks v. City of Seattle*,
    2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) ...............................................12

*Meng v. Schwartz*,
    116 F. Supp. 2d 92 (D.D.C. 2000) .....................................................................11

*Michiana Abortion Clinic, P.C. v. Kirts*,
    1995 WL 254381 (W.D. Mich. Jan. 9, 1995) .......................................................4

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    505 F. Supp. 2d 1 (D.D.C. 2007) ..................................................................22, 23

*Mjema v. United States*,
    881 F. Supp. 2d 89 (D.D.C. 2012) .......................................................................6

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .............................................................................................3

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) .............................................................................................4

*Nader v. Democratic Nat'l Comm.*,
    567 F.3d 692 (D.C. Cir. 2009) .............................................................................5

*National Organization for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994) .....................................................................................1, 3, 4

*Ne. Women's Ctr., Inc. v. McMonagle*,
    868 F.2d 1342 (3d Cir. 1989) ...............................................................................5

*United States ex rel. O'Connor v. U.S. Cellular Corp.*,
    2022 WL 971290 (D.D.C. Mar. 31, 2022) ..........................................................10

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ...............................................................................13

*Quick v. EduCap, Inc.*,
    318 F. Supp. 3d 121 (D.D.C. 2018) ....................................................................20

*Republic of Kazakhstan v. Stati*,
    380 F. Supp. 3d 55 (D.D.C. 2019) ......................................................................11

*Richards v. Mileski*,
    662 F.2d 65 (D.C. Cir. 1981) ..............................................................................20

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989) ................................................................20, 22

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
   682 F.3d 1043 (D.C. Cir. 2012) ....................................................8, 9, 10, 11

*Sandvig v. Sessions*,
   315 F. Supp. 3d 1 (D.D.C. 2018) .......................................................................4

*Savage v. Council on Am.-Islamic Rels., Inc.*,
   2008 WL 2951281 (N.D. Cal. July 25, 2008) .................................................4

*Sculimbrene v. Reno*,
   158 F. Supp. 2d 8 (D.D.C. 2001) .......................................................................4

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
   585 F. Supp. 2d 789 (E.D. Va. 2008) ..........................................................4, 5

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
   585 F. Supp. 2d 815 (E.D. Va. 2008) ...............................................................5

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ...........................................................................................4

*Sprint Commc'ns Co., L.P. v. FCC*,
   76 F.3d 1221 (D.C. Cir. 1996) ..................................................................19, 20

*Tajleed-Steven: Hardy Fam. of Hardy Tr./Estate v. Navy Fed. Credit Union*,
   2024 WL 4468655 (W.D. Ky. Oct. 10, 2024) ...............................................15

*Thompson v. Trump*,
   590 F. Supp. 3d 46 (D.D.C. 2022) ...........................................................4, 5, 6

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 132 (D. Conn. 2014) ..............................................................15

*Tunne v. Hendrick*,
   2012 WL 3644825 (W.D. Ky. Aug. 24, 2012) .............................................15

*United States v. Acosta*,
   110 F. Supp. 2d 918 (E.D. Wis. 2000) .............................................................4

*United States v. Larson*,
   807 F. Supp. 2d 142 (W.D.N.Y. 2011) .........................................................4, 5

*United States v. Mellen*,
   393 F.3d 175 (D.C. Cir. 2004) .........................................................................8

*United States v. Porat*,
    76 F.4th 213 (3d Cir. 2023) .............................................................................13

*Williams v. Conner*,
    522 F. Supp. 2d 92 (D.D.C. 2007) ....................................................................20

*Yesko v. Fell*,
    2014 WL 4406849 (D. Md. Sept. 5, 2014) ........................................................15

*Youming Jin v. Ministry of State Sec.*,
    335 F. Supp. 2d 72 (D.D.C. 2004) ..................................................................8, 9

*Zerangue v. TSP Newspapers, Inc.*,
    814 F.2d 1066 (5th Cir. 1987) ...........................................................................13

**Statutes**

18 U.S.C. § 1962 .......................................................................................................11

Tex. Bus. Orgs. Code § 11.356 .................................................................................16

**Court Rules**

Fed. R. Civ. P. 10 .....................................................................................................10

## <u>INTRODUCTION</u>

Nada's opposition brief confirms that Dr. Lorenzo Vidino had no business being named in this lawsuit.  *See* ECF No. 87 ("Opp.").  Rather than addressing the multiple reasons that the claim against Dr. Vidino for conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") should be dismissed, Nada attempts to blur the line between the threadbare allegations about Dr. Vidino and allegations made against the other Defendants.  That tactic is not enough to survive a motion to dismiss, and Nada cannot overcome the failure of the Amended Complaint to state a plausible RICO conspiracy claim against Dr. Vidino.

*First*, Nada does not meaningfully dispute that Dr. Vidino's speech and petitioning activities are protected by the First Amendment.  *See* Opp. 66; ECF No. 84-1 ("Mot.") 4–6; 11–26.  Instead, Nada contends that the First Amendment does not apply to RICO claims, supported exclusively by a "*cf.*" citation to *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994).  But the Supreme Court held no such thing in *Scheidler*, and many courts, including in this District, have since dismissed RICO claims on First Amendment grounds.  *See, e.g.*, *Feld Ent., Inc. v. Am. Soc'y for Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 307–08 (D.D.C. 2012).

*Second*, Nada fails to identify where the Amended Complaint plausibly alleges that Dr. Vidino knowingly joined a RICO conspiracy.  *See* Opp. 66–68.  That is because it does not. Instead, Nada shifts focus to the alleged enterprise's intentions to "hir[e]" Dr. Vidino and "use" him "as a source" and "an intermediary," *id.* at 66–67, and mischaracterizes allegations as showing a "close relationship" between Dr. Vidino and Alp employees, *id.* at 66.  But the Amended Complaint alleges only one meeting between Dr. Vidino and any Defendant.  *See* ECF No. 76 ("Am. Compl.") ¶ 128.  And the alleged private messages between Dr. Vidino and an Alp employee, *see id.* ¶ 40, merely state Dr. Vidino's after-the-fact opinion about past events and are consistent with Dr. Vidino's ordinary business practice of consulting with governments and private entities

as an expert on terrorism financing, *see* Mot. 4–6, 27–31.  That does not come even remotely close to alleging that Dr. Vidino knowingly joined a RICO conspiracy.

*Third*, Nada fails to shore up the substantive RICO claim required to maintain the RICO conspiracy claim against Dr. Vidino.  *See* Opp. 34–60.  While Nada concedes that defamation is not a RICO predicate, *id.* at 34–37, 66, he argues that the same alleged statements can give rise to wire fraud when made with intent to defraud, *id.* at 35.  But the Amended Complaint fails to allege any intent to defraud anyone, much less Nada or Lord Energy.  As for bank fraud, Nada attempts to sidestep the rule that only a defrauded financial institution may assert such claims under civil RICO.  *Id.* at 41.  But the cases he relies on, *e.g.*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011), ultimately apply the same rule, *id.* at 1098.  Nada's efforts to show domestic injury likewise fall flat.  *See* Opp. 51–55.  Nada concedes that U.S. citizenship is not "dispositive," *id.* at 53, and whether under Texas law or general principles of federal law, Nada lacks standing to vindicate the rights of a dissolved entity like Americas Lord Energy.  Nor can Nada overcome his failure to allege proximate cause, as the causal chain set out in the Amended Complaint is even more attenuated than that rejected in *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010).

*Fourth*, Nada fails to show why his RICO claims should not be dismissed as untimely under RICO's four-year statute of limitations.  Nada admits that he discovered his alleged injury by April 2019 (more than four years before he filed this lawsuit), and argues that the limitations period should be tolled until April 2021 for fraudulent concealment.  *See* Opp. 60.  But Nada does not allege affirmative acts of concealment by any Defendant, let alone by Dr. Vidino, and concedes that he had actual notice of his injury more than four years before filing suit notwithstanding the supposed concealment.  *E.g.*, Am. Compl. ¶¶ 157–60.  Nada simply waited too long.

Any one of these pleading failures requires dismissing Dr. Vidino from this case. And because Nada has already shown that the flaws in his legal theory cannot be rectified by additional allegations, *see Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299–300 (D.C. Cir. 1993); *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 172 (D.D.C. 2013), dismissal should be with prejudice.

## ARGUMENT

### I.    Dr. Vidino's Statements Are Protected By The First Amendment.

The First Amendment bars Nada from maintaining this damages action against Dr. Vidino based on protected speech and petitioning activities. Nada does not even attempt to argue that he alleged Dr. Vidino made false statements with actual malice, *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), or that Dr. Vidino's petitioning activity was fraudulent and thus unprotected by the *Noerr-Pennington* doctrine, *see* Mot. 13–26. Nada's only argument—that First Amendment protections are inapplicable to civil RICO claims, Opp. 66—is foreclosed by precedent and untenable as a matter of constitutional law. Because Nada forfeited any other response to these arguments, Dr. Vidino should be dismissed from the case on First Amendment grounds.

#### A.    The First Amendment applies to RICO claims based on protected activities.

Nada's only support for the argument that First Amendment protections do not apply to civil RICO is a "*cf.*" citation to *Scheidler*, 510 U.S. at 252–53. But the Supreme Court *explicitly* "decline[d] to address the First Amendment question argued by respondents" in that case. *Id.* at 262 n.6. The "question presented for review asked simply whether the Court should . . . limi[t] RICO to cases where either the enterprise or racketeering activity has an overriding economic motive." *Id.* Several Justices "stress[ed] that the Court's opinion does not bar First Amendment challenges to RICO's application in particular cases," *id.* at 263 (Souter, J., concurring), and

"caution[ed] courts applying RICO to bear in mind the First Amendment interests that could be at stake" because "RICO actions could deter protected advocacy," *id.* at 265 (Souter, J., concurring).[1]

Rather, it is a bedrock principle of First Amendment jurisprudence that "the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982). As the D.C. Circuit has recognized, a civil action "can be maintained *only* to the extent it does not interfere with First Amendment rights of free expression." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584 (D.C. Cir. 2016) (emphasis added); *see also Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("[T]he Constitution imposes stringent limitations upon the permissible scope of such liability." (quotation omitted)). This Court, too, has held that the Supreme Court's decision in "*New York Times* establishes the parameters of the First Amendment right to free speech as it relates to an action for damages allegedly caused by that speech." *Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 18 (D.D.C. 2001).[2]

For this reason, courts have consistently recognized—both before and after *Scheidler*—that the First Amendment applies to civil RICO claims based on speech. *See Savage v. Council on*

---

[1] Courts citing *Scheidler* have not understood the decision to in any way preclude application of First Amendment defenses to civil RICO claims. *See, e.g.*, *United States v. Larson*, 807 F. Supp. 2d 142, 166 (W.D.N.Y. 2011); *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 585 F. Supp. 2d 789, 804–05 (E.D. Va. 2008); *United States v. Acosta*, 110 F. Supp. 2d 918, 932 (E.D. Wis. 2000); *Michiana Abortion Clinic, P.C. v. Kirts*, 1995 WL 254381, at *4 (W.D. Mich. Jan. 9, 1995); *see also Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997).

[2] Courts have applied this rule to a variety of civil claims for damages. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 460 (2011) (intentional infliction of emotional distress and intrusion upon seclusion); *Sculimbrene*, 158 F. Supp. 2d at 18 (conspiracy to interfere with civil rights); Mot. 12 (collecting additional authorities); *see also Thompson v. Trump*, 590 F. Supp. 3d 46, 109 (D.D.C. 2022) ("Speech on matters of public concern may even be protected if it is part of a concerted violation of law."); *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 17 (D.D.C. 2018) ("[P]rivate speech prohibitions can still implicate the First Amendment when given the imprimatur of state protection through civil or criminal law.").

*Am.-Islamic Rels., Inc.*, 2008 WL 2951281, at *12 (N.D. Cal. July 25, 2008); *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 585 F. Supp. 2d 815, 824 (E.D. Va. 2008); *Smithfield Foods*, 585 F. Supp. 2d at 804; *Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1348 (3d Cir. 1989); *cf. Larson*, 807 F. Supp. 2d at 165–66.  Nada offers no reason to conclude that civil RICO claims—alone among all other civil claims for damages—are subject to a different rule, and there is no sound statutory or constitutional reason for doing so.

The same is true with the *Noerr-Pennington* doctrine, which "prohibits any sanction" on petitioning activities.  *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009); *see also Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005).  Although the doctrine first arose in the context of the antitrust laws, courts have extended it broadly to causes of action that raise similar concerns.  *See, e.g.*, *Feld*, 873 F. Supp. 2d at 307–08.  Nada therefore cannot seek to hold Dr. Vidino liable for speech that was originally directed to (or indistinguishable from speech originally directed to) public officials in congressional testimony, testimony in court, and other public-policy advocacy on the topic of terrorist-organization financing.  *See* Mot. 23–24.

To the extent Nada claims that the First Amendment does not apply to conspiracy claims more generally, that argument misses the mark.  It confuses criminal conspiracy—which may not be protected by the First Amendment to the same extent—with civil conspiracy—which is protected by the First Amendment.  *See Thompson*, 590 F. Supp. 3d at 109–10.  In *Thompson*, members of the House of Representatives and Capitol Police officers sued former President Trump, alleging a conspiracy to prevent the discharge of their duties in violation of 42 U.S.C. § 1985(1), which protects public officials against conspiratorial acts directed at preventing the performance of official duties.  *Id.* at 62.  The plaintiffs argued that conspiratorial statements and agreements in furtherance of unlawful actions are not protected by the First Amendment.  *Id.* at 109.  The court

rejected such a "broad-stroke principle[]," explaining that plaintiffs relied on cases involving "criminal conspiracies, which the Supreme Court seems to have put in its own category." *Id.*

Other courts have similarly rejected arguments that First Amendment protections "d[o] not shield" speakers from liability "because the speech at issue is integral to the commission of a crime." *Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *3 (S.D.N.Y. May 30, 2020). The question is whether the plaintiff "fails to adequately allege that the speech at issue *is* integral to the commission of any crime." *Id.* (emphases altered). Nada failed to do so here by alleging only speech and petitioning activities that fall within the First Amendment's ambit and, as explained below, do not constitute any RICO predicate act. Nada cannot overcome the First Amendment's protections by declaring, *ipse dixit*, that certain claims are categorically exempt—the only way to maintain this action is by plausibly alleging unprotected speech, and Nada has not done so.

**B. Nada forfeited any other response to dismissal on First Amendment grounds.**

Nada's failure to address Dr. Vidino's First Amendment arguments dooms his claim. Nada concedes that he "do[es] not allege that [Dr] Vidino's statements constituted fraud (or even defamation)." *Compare* Opp. 66, *with* Mot. 13–26. In other words, Nada concedes that he cannot show actual malice sufficient to overcome the First Amendment's protections for speech on matters of public concern, Mot. 13–21, or fraud as necessary to overcome the *Noerr-Pennington* doctrine, *id.* at 21–26. Rather, he rests on the mistaken assumption that the First Amendment does not apply to civil RICO conspiracy claims, and even there fails to supply any real arguments.

As this Court has repeatedly recognized, a party's "failure to respond to [an] argument is enough to consider the issue conceded." *Duffy v. Bank of Am., N.A.*, 13 F. Supp. 3d 57, 61 n.3 (D.D.C. 2014); *Mjema v. United States*, 881 F. Supp. 2d 89, 92 n.2 (D.D.C. 2012) ("Because plaintiff failed to respond to this argument in his opposition to defendant's motion to dismiss, it is deemed conceded."); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174,

178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff . . . address[es] only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  This Court should thus dismiss Dr. Vidino from the case.

## II.   Nada Fails To Allege That Dr. Vidino Knowingly Joined A RICO Conspiracy.

Alternatively, this Court should dismiss Dr. Vidino from the case with prejudice because Nada failed to show that Dr. Vidino knew about or agreed to further the goals of any racketeering conspiracy.  *See* Mot. 27–31.  Nada concedes that such allegations are essential to survive a motion to dismiss, Opp. 62; *Barlow v. McLeod*, 666 F. Supp. 222, 225 (D.D.C. 1986), but nevertheless falls well short of plausibly alleging the requisite knowledge or agreement.

Many of Nada's arguments do not even implicate conduct by Dr. Vidino.  Rather, Nada attempts to salvage his claim against Dr. Vidino by relying on allegations about Alp's conduct, claiming that Alp "used" Dr. Vidino to further the alleged conspiracy.  Opp. 66–67.  Nada argues that "[t]he enterprise *hired* Vidino to gather 'rumours' and provide other information," that Alp "*use[d]* Vidino as a source" and "an intermediary," that it "*used* Vidino to funnel" information, and that it "leveraged Vidino's prominence[.]"  *Id.* (emphases added).  At most, these arguments show Alp's alleged motivations, not "specific acts by [Dr. Vidino]" showing agreement to join and further any conspiracy.  *Barlow*, 666 F. Supp. at 225.  Because the Amended Complaint lacks any allegations plausibly showing agreement, Nada attempts to hold Dr. Vidino liable by obscuring which allegations relate to which Defendant and ignoring Dr. Vidino's arguments that the Amended Complaint comes up empty with respect to him in particular.

*First*, Nada attempts to show agreement by insinuating a vague "closeness" between Dr. Vidino and Alp, stating that Dr. Vidino "met with Alp employees on *multiple* occasions," and "*routinely* exchanged WhatsApp messages with Brero, Badal, and another Alp employee."  Opp. 67 (emphases added).  But these arguments misstate the allegations in the Amended Complaint.

Far from alleging meetings on "multiple occasions" or "routin[e] exchange[s]" of messages, the Amended Complaint alleges only one meeting and only one set of WhatsApp messages, in which Dr. Vidino supposedly opined that Crédit Suisse withdrew funding for Lord Energy because of articles allegedly sponsored by Alp. *See* Am. Compl. ¶¶ 40, 128. That handful of alleged contacts does not plausibly allege such "closeness" that agreement to join a conspiracy may be *assumed*. At most, they show that Dr. Vidino offered an opinion on organizational financing—a topic squarely within his core competency as an academic—which is not sufficient to show knowledge of a conspiracy, let alone agreement to join a conspiracy. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1050–51 (D.C. Cir. 2012).

Agreement to join a RICO conspiracy may be inferred only "from a combination of close relationships" *and* "other supporting circumstantial evidence" that allows the court to deduce an agreement to commit RICO offenses or further an enterprise. *United States v. Mellen*, 393 F.3d 175, 191 (D.C. Cir. 2004). The Amended Complaint falls well short of plausibly alleging "close relationships" and offers no other circumstantial evidence supporting an inference that Dr. Vidino knowingly agreed to join or further a criminal conspiracy. Even "relationships among members of the alleged enterprise," without more, is not sufficient to show knowing agreement. *Cheeks v. Ft. Myer Constr. Corp.*, 216 F. Supp. 3d 146, 163 (D.D.C. 2016). If Nada's threadbare assertions were sufficient to imply a RICO conspiracy, virtually anyone could be forced to litigate a claim for treble damages based on one-off interactions. That is not, and cannot be, the law.

Nada's cited case, *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72 (D.D.C. 2004), only highlights that the Amended Complaint is miles away from alleging the required closeness. Opp. 67. That case involved allegations that (1) the defendant twice assaulted plaintiffs for protesting against the Chinese government; (2) officials from the Chinese consulate defended

him for those actions; (3) the defendant was an employee of an organization created by the Chinese government to carry out its agenda outside of China; and (4) the defendant was rewarded for his activity, including by a personal reception from the Chinese President. *Youming Jin*, 335 F. Supp. 2d at 76. Nada alleges nothing even close to those facts here.

*Second*, Nada asserts that Dr. Vidino supposedly knew of and agreed to join a conspiracy because he allegedly knew that the United Arab Emirates ("UAE") was Alp's "most realistic client." Opp. 67. As previously explained, this quote comes from a 2023 *New Yorker* article, was in response to a leading question, and was quickly clarified by Dr. Vidino. *See* Mot. 29. Dr. Vidino never stated that he knew at the time that the UAE was Alp's ultimate alleged client. In any event, Nada's reliance on this statement misses the mark because the identity of Alp's supposed client is not sufficient to show that Dr. Vidino knowingly agreed to join a conspiracy. Even knowledge of "the source of the fees" obtained through a business arrangement "does not support a plausible inference" of knowledge or agreement. *RSM Prod.*, 682 F.3d at 1050. Nada does not allege that Dr. Vidino knew Alp and the UAE were supposedly engaged in an unlawful conspiracy, and there are certainly no allegations that Dr. Vidino agreed to join such a conspiracy. In any event, Nada contradicts his own theory by alleging that Alp decided "to disguise the identity of [its] Emirati clients, telling [Dr.] Vidino that Alp had been hired by a 'London-based law firm.'" Am. Compl. ¶ 128. Nada cannot claim that Dr. Vidino knowingly agreed to join a conspiracy while conceding that the identity of the alleged co-conspirators was withheld from Dr. Vidino.

*Third*, Nada also cannot show knowledge or agreement merely by alleging that Dr. Vidino was paid to do consulting work for Alp or that he expressed an opinion about Crédit Suisse cutting off Lord Energy's funding. *See* Opp. 67 n.17. The D.C. Circuit has already rejected such flawed reasoning, holding that "it is implausible to infer" that "provision of [professional] services" was

intended to further criminal endeavors where the services are "'more likely explained by'" the provider's "normal business practice." *RSM Prod.*, 682 F.3d at 1051 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).  As an expert in extremist-organization financing, Dr. Vidino routinely provides research on that subject to governments and private entities.  *See* Mot. 4–6, 17, 23–24. These allegations are more likely explained by his ordinary business of providing such research.

Fourth, with no plausible allegations of his own to draw from, Nada attempts to rely on several media "sources" that supposedly "acknowledged Vidino's importance to the enterprise[]." Opp. 68.  But the statements Nada draws from are "conclusory," made in an entirely different context, and do not show that Dr. Vidino agreed to join a conspiracy.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("Without more . . . a conclusory allegation of agreement . . . does not supply facts adequate to show illegality.").  The statement in *Der Spiegel* that Dr. Vidino "played an important role" is conclusory and adds nothing to Nada's allegations.  And the allegations in the separate *Hafez* lawsuit that Dr. Vidino supposedly "blacklisted" Hafez for challenging "Dr. Vidino's false accusations against Western Muslims," Am. Compl. ¶ 278, are likewise conclusory and not pleaded with specificity—not to mention barred from consideration under Federal Rule of Civil Procedure 10(c) as an allegation in a different case, *see United States ex rel. O'Connor v. U.S. Cellular Corp.*, 2022 WL 971290, at *6 (D.D.C. Mar. 31, 2022).

Similarly, the post-resignation statement by a former Program on Extremism affiliate years after the events alleged in the Amended Complaint in no way establishes that Dr. Vidino knew about or agreed to join a conspiracy.  *See* Opp. 68.  Again, the D.C. Circuit has rejected a similar argument, holding that "it is implausible to infer" that after-the-fact reports "would have alerted [the defendant] to a bribery-racketeering conspiracy to deny [the plaintiff's] license application three years earlier."  *RSM Prod.*, 682 F.3d at 1050.

*Finally*, Nada's attempt to distinguish *RSM Production* fails. Nada argues that case is different because the plaintiffs there did not allege that the enterprise used the defendant law firm to carry out or conceal its racketeering activities. Opp. 68. But the plaintiffs in *RSM Production* alleged exactly that, stating that the law firm "knowingly agreed to perform services of a kind which have facilitated the activities of those who are operating the [e]nterprise . . . in an illegal manner." 682 F.3d at 1047. Indeed, the plaintiffs in that case alleged that the enterprise's aim was to "conceal the scheme, since it was and is necessary to avoid detection." *Id.* (alterations omitted). Critically, the D.C. Circuit did not assume that the enterprise's alleged use of the law firm showed that the law firm knew about or agreed to join the conspiracy—the existence of the conspiracy did not establish that the defendant law firm *knew about* the conspiracy. Rather, the D.C. Circuit considered the alleged actions of the defendant and concluded that it was implausible to infer that the defendant intended to further the criminal endeavor. *Id.* at 1050–51. So too here.

## III. Alternatively, Nada Cannot Maintain A RICO Conspiracy Claim Against Dr. Vidino Because Nada Cannot Show A Substantive RICO Violation.

Nada's failure to allege a substantive RICO violation is an independent reason for finding that Nada fails to plead a RICO conspiracy claim against Dr. Vidino under 18 U.S.C. § 1962(d). *See Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 65 (D.D.C. 2019); *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 274 (D.D.C. 2011). Nada offers nothing in his opposition showing that the Amended Complaint plausibly alleges RICO predicates, a pattern of racketeering activity, domestic injury, or proximate cause. *See* Mot. 31–45.

### A. Nada does not allege a RICO predicate or pattern of racketeering activity.

As explained, "a plaintiff must allege, inter alia, two or more predicate acts that constitute a pattern of racketeering activity." *Meng v. Schwartz*, 116 F. Supp. 2d 92, 95 (D.D.C. 2000) (quotation omitted). At most, Nada alleges only a defamation claim. But the "law is clear" that

"defamation is not a predicate act under RICO," *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019) (citing *Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015)), and Nada cannot plead around this rule by "shoehorn[ing] a defamation claim into the RICO framework," *id.* (collecting cases).  Nada's attempts to manufacture a RICO predicate do not withstand scrutiny.

### i.   Nada does not allege wire fraud.

Nada contends that he alleges wire fraud, not defamation.  Opp. 35.  But as this Court has recognized, the distinguishing feature between defamation and wire fraud is whether statements "were known to be false when made."  *Cohen*, 410 F. Supp. 3d at 191; *see also Marks v. City of Seattle*, 2003 WL 23024522, at *6 (W.D. Wash. Oct. 16, 2003).  Nada does not allege that the statements made about him and Lord Energy were made with *knowledge* that they were false.  Nada points to Alp's alleged statement that it would use "fake news" to argue that Defendants made knowingly false statements.  Opp. 38; Am. Compl. ¶¶ 101–02.  But this conclusory allegation is devoid of any substance.  Nada does not tie this allegation to any specific statements, nor does he allege when or how Alp actually relied on such "fake news."  The Amended Complaint merely states that Alp "proposed" that it would do so.  Am. Compl. ¶ 101.  Indeed, Nada concedes that this statement was made *before* Alp had identified its supposed targets or conducted any research, Opp. 38–39, so without a connection to any specific statements, this allegation does not permit an inference that Defendants made any statements knowing that they were false.

Moreover, the allegation that Defendants meant to "seriously damage" Nada does not show that Defendants knew their statements were false—after all, the truth can also be damaging to an entity's ability to obtain millions of dollars in financing.  Opp. 39.  Nor does the allegation that Alp knew that Nada disputed these statements *after* they were made show that Defendants knew the statements were false when made.  *Id.*  Finally, the allegation that Defendants attempted to hide their identities, *id.* at 36–37, also does not plausibly show that they knowingly made false

statements, as that could equally likely be explained by fear of retaliation from exposing what they believed to be Nada's ties to extremist organizations, *see Iqbal*, 556 U.S. at 680.

Ironically, Nada relies on *defamation* cases to argue that he alleged something other than defamation.  Opp. 38–39; *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989); *Herbert v. Lando*, 441 U.S. 153 (1979); *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987); *De Laire v. Voris*, 2023 WL 5096150 (D.N.H. Aug. 9, 2023).  Nada's use of these cases reinforces Dr. Vidino's larger point: Nada is attempting to shoehorn a defamation claim into civil RICO.

Perhaps recognizing that he cannot point to allegations showing wire fraud rather than defamation, Nada contends that "the same statement can give rise to claims for defamation and wire fraud," Opp. 35, and points to *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 783–84 (6th Cir. 2002), for support.  But that out-of-circuit case did not involve wire-fraud, defamation, or RICO claims; nor is it clear how this case supports Nada's proposition.

Nada also claims that the distinguishing feature between defamation and wire fraud "is the intent to deprive the victim of money or property."  Opp. 35.  But Nada does not cite a single case that supports this distinction.  The Third Circuit's decision in *United States v. Porat*, 76 F.4th 213 (3d Cir. 2023), only undermines Nada's point.  There, the court held that the wire-fraud statute criminalizes schemes to defraud or to "obtai[n] money or property by means of false or fraudulent pretenses."  *Id.* at 218.  The "property" must be the "object of the fraud" and the "loss to the victim" cannot be an "incidental byproduct of the scheme."  *Id.* (quotations omitted).  Here, Nada does not allege that the alleged scheme was for the purpose of "obtaining money or property" from Nada, and any loss on his part was incidental to the statements made about his potential ties to terrorism. Indeed, in *Cohen*, the plaintiff alleged that it suffered monetary damages as a result of defendant's

alleged false statements, but this Court found that the allegation amounted to no more than garden-variety defamation and could not support a civil RICO claim.  410 F. Supp. 3d at 187, 189–90.

Nada fails to distinguish *Cohen*.  According to Nada, the complaint in that case did not allege that defendants made a false statement.  *See* Opp. 37.  Yet the plaintiff there stated that defendant "falsely designated" it "as a hate group in furtherance of a scheme to destroy [plaintiff]."  *Cohen*, 410 F. Supp. 3d at 187, 193.  The dispositive issue was whether "any fraud occurred."  *Id.* at 190.  And "fraud," as explained above, turns on whether the statements made "were known to be false when made."  *Id.* at 191.  Nada addresses none of these arguments.

Nada's attempt to recast his allegations as wire fraud fails for a separate reason.  In the RICO context, "the defendant must make a false statement or omission of fact *to the plaintiff*."  *Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 91 (D.D.C. 2006) (quotation omitted).  Nada does not claim that any of the alleged false statements were made *to him*.  *E.g.*, Am. Compl. ¶ 157.  Instead, Nada cites *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 647 (2008), for the proposition that a wire-fraud victim does not need to rely on the alleged false statements to their detriment so long as another party does so.  *See* Opp. 40.  But *Bridge* involved mail fraud, not wire fraud, and as explained below, the chain of causation here between the alleged statements and the decisions by banks not to finance Lord Energy is too attenuated to invoke third-party reliance.

### ii.    *Nada cannot allege a RICO claim based on bank fraud.*

Nada also fails to allege bank fraud as a second or alternative RICO predicate because "only a defrauded financial institution may assert bank fraud as a predicate act for a federal RICO claim."  *Am. Biocare, Inc. v. Howard & Howard Att'ys, PLLC*, 2016 WL 5661583, at *8 (E.D. Mich. Sept. 30, 2016).  Neither Nada nor Lord Energy are financial institutions.

According to Nada, any plaintiff that suffers injury to money or property has standing to assert bank fraud as a predicate act under civil RICO.  Courts across the country have held precisely

the opposite.[3]  That rule is sensible because the bank-fraud statute "is intended to protect financial institutions and not those who may be derivatively affected by fraud committed upon a financial institution."  *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 563 (N.D. Ill. 1998).

Nada's cited cases do not support his position.  The first, *Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Church Ministries, Inc.*, 223 F. Supp. 3d 1, 8 (D.D.C. 2016), did not address the question or analyze bank fraud, but simply denied a motion to dismiss focused largely on "mail and wire fraud" as well as "fraud relating to access devices."  The second, although entertaining the view that a non-bank plaintiff could theoretically bring a claim, ultimately rejected that view on the ground that financial institutions were the "more direct victims" that "were the targets of the alleged fraud" and "have a substantial stake in recovering any financial losses they incurred."  *Hill*, 841 F. Supp. 2d at 1098.  The *Hill* court *agreed* with the established rule "hold[ing] that only banks can assert a RICO claim based on predicate acts of bank fraud."  *Id.*

### B.  Nada does not allege a domestic injury.

Nada also fails to plausibly allege any injury within the United States.  *See* Mot. 36–41. To get around this problem, Nada attempts to piece together a domestic injury by relying on alleged injuries to Americas Lord Energy and his United States citizenship.  *See* Opp. 52–54.  But neither

---

[3] *See, e.g.*, *Tajleed-Steven: Hardy Fam. of Hardy Tr./Estate v. Navy Fed. Credit Union*, 2024 WL 4468655, at *5 (W.D. Ky. Oct. 10, 2024) ("[O]nly defraud[ed] financial institutions have standing to assert bank fraud as a RICO predicate."); *Adam v. Nakhle*, 2023 WL 8004712, at *23 (N.D. Ohio Nov. 17, 2023); *Am. Biocare*, 2016 WL 5661583, at *8; *Yesko v. Fell*, 2014 WL 4406849, at *10– 11 (D. Md. Sept. 5, 2014); *Tunne v. Hendrick*, 2012 WL 3644825, at *13 (W.D. Ky. Aug. 24, 2012); *In re Triligiant Corp.*, 11 F. Supp. 3d 132, 141 (D. Conn. 2014); *Kinsley v. Nat'l Better Living Ass'n, Inc.*, 2014 WL 4084517, at *5 (N.D. W. Va. Aug. 19, 2014); *Ewing v. FBI*, 2011 WL 6034614, at *1 (E.D.N.C. Dec. 5, 2011); *Dimas v. Vanderbilt Mortg. & Fin., Inc.*, 2010 WL 3342216, at *12 (S.D. Tex. Aug. 25, 2010); *Herrick v. Liberty League Int'l*, 2008 WL 2230702, at *4 (S.D. Ohio May 28, 2008); *Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652, at *10 (N.D. Cal. Sept. 26, 2007); *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 563 (N.D. Ill. 1998).

Nada nor Lord Energy have standing to assert Americas Lord Energy's injuries, and Nada's U.S. citizenship, without more, is insufficient to establish domestic injury.

Nada's attempt to establish a domestic injury by relying on alleged injuries to non-party Americas Lord Energy fails because Nada lacks standing to assert claims on behalf of Americas Lord Energy. *See* Mot. 37–38. Nada does not dispute that such standing is required; instead, he argues that the question is controlled by Texas law, and that Texas law would confer standing under the circumstances. *See* Opp. 53–54. But even under Texas law, the answer is the same.

It is undisputed that Americas Lord Energy is a dissolved entity. Am. Compl. ¶ 27. Under Texas law, a dissolved entity has three years from its dissolution to "prosecut[e] or defend[]" any "action or proceeding brought by or against the terminated entity." Tex. Bus. Orgs. Code § 11.356(a)(1) ("[T]he terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination[.]"); *Hunter v. Ft. Worth Cap. Corp.*, 620 S.W.2d 547, 549 (Tex. 1981) (refusing to consider "post-dissolution claim against the corporation" brought more than three years after dissolution). The same bar applies to a third party that derivatively "stands in the shoes" of a dissolved corporation—such a party "cannot bring" a claim that the corporation "could not bring." *Carter v. Harvey*, 525 S.W.3d 420, 429 (Tex. Ct. App. 2017).

Application of this rule is straightforward. The Amended Complaint states that Americas Lord Energy was dissolved in March or April 2019, Am. Compl. ¶¶ 27, 213 (listing inconsistent dates), meaning Americas Lord Energy had three years to vindicate any rights. Because Nada brought this action in January 2024, Americas Lord Energy would lack standing to sue; likewise, Nada has no standing to sue on Americas Lord Energy's behalf.

Nor could Nada rely on an equitable-tolling theory to extend this deadline. In Texas, statutory provisions are "mandatory and exclusive, and must be complied with in all respects or

the action is not maintainable." *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (quotation omitted). Texas courts have refused to apply equitable tolling to the three-year survival statute. *See Hunter*, 620 S.W.2d at 551 (finding that permitting equitable tolling would undermine legislative intent); *Askanase v. Fatjo*, 828 F. Supp. 461, 464 (S.D. Tex. 1993) (rejecting plaintiffs' attempt to equitably toll the survival period); *see also Gomez v. Pasadena Health Care Mgmt., Inc.*, 246 S.W.3d 306, 316 (Tex. Ct. App. 2008) ("[I]f a party fails to sue within the time limits of the survival statute, there is no longer an entity that can be sued.").

Nada's only remaining recourse is to rely on his U.S. citizenship. But this Court has already held that "U.S. citizenship" does not "change the essentially foreign nature of the racketeering activity" that alleged occurred outside the United States. *Hourani*, 943 F. Supp. 2d at 167 (quotation omitted). Citizenship alone cannot serve as the basis for Nada's domestic injury.

**C. Nada does not allege proximate cause under RICO's heightened standard.**

Nada fails to allege that the asserted misconduct fell within the "first step" in the causal chain of injury as required to satisfy RICO's proximate-cause requirement. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271–72 (1992). For civil RICO, proximate cause requires alleging "some direct relation," and a link that is "too remote, purely contingent, or indirect is insufficient." *Hemi Grp.*, 559 U.S. at 9 (quotation and alteration omitted); *see City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035 (9th Cir. 2021) (en banc) (the statutory "direct relation" requirement is "more stringent" than the "foreseeability" standard for proximate cause used in other contexts).

Nada alleges a causal chain that is far too attenuated. Nada's theory is that the Defendants caused journalists and others to make or repeat false statements about Nada and Lord Energy, which were then picked up by media organizations and websites, which then led financing watchlists to designate Nada and Lord Energy as a risk based in part on that information, which then led banks to refuse to do business with Lord Energy, which eventually led to its bankruptcy.

17

*See* Mot. 41–43. This causal chain certainly requires "'go[ing] beyond the first step.'" *Hemi Grp.*, 559 U.S. at 10 (quoting *Holmes*, 503 U.S. at 271). The conduct directly responsible for Nada's asserted injury was the bank's refusal to do business with Lord Energy, but the conduct constituting the alleged RICO violation was sponsoring false statements by third parties. *See* Mot. 40.

Nada attempts to distinguish *Hemi Group* on the ground that causation was "more attenuated" there than the causation here. Opp. 50–51. Yet the causal chain in *Hemi Group* was *less* attenuated, and involved three distinct links: The plaintiff (a city) alleged that the defendant (a cigarettes retailer) caused it to lose revenue by not providing necessary tax information about its customers to the State, which then could not provide that information to the City; as a result, the City could not tax these individuals. 559 U.S. at 5. The causal chain here involves *five* links: Nada alleges that Defendants sponsored false statements, which were then published by media organizations, which were then picked up by the financing watchlists, who designated Nada and Lord Energy as a risk, which then led banks to refuse to do business with Lord Energy, which eventually led to its bankruptcy. As in *Hemi Group*, the causal chain goes beyond the first step. Nada's only response is the conclusory argument that the statements made "were the fraud that caused Plaintiffs' injuries," Opp. 51, but that completely overlooks the attenuated causal chain.

In an attempt to gloss over this problem, Nada relies on *Bridge* to argue that Defendants allegedly made statements to third parties with the intent of causing banks to stop dealing with Lord Energy. Opp. 47. *Bridge* involved bidders at a county tax-lien auction: The county allocated bids on a rotational basis, incentivizing bidders to use agents to bid on their behalf, a practice which the county prohibited. 553 U.S. at 642–43. One of the losing bidders claimed that a competitor defrauded the county by employing shadow bidders to secure a greater portion of liens than it was due. *Id.* In *Hemi Group*, the Court distinguished *Bridge* on the grounds that the claim

was "straightforward," involved a "zero-sum . . . auction," and that only the plaintiff was injured, since the county benefited from the revenue regardless of which bidder prevailed.  559 U.S. at 14. The Court also noted that unlike *Bridge*, where there were "no independent factors that account[ed] for [plaintiff's] injury," the City's theory of liability in *Hemi Group* rested on "the independent actions of third and even fourth parties."  *Id.* at 15 (quotations omitted).

So too here.  Nada's theory is nowhere as straightforward as the claims in *Bridge*, where fraudulent statements to the county directly resulted in bid awards at the plaintiff's expense.  Rather, "multiple steps" "separate the alleged fraud from the asserted injury."  *Hemi Grp.*, 559 U.S. at 15. This case, in other words, is indistinguishable from *Hemi Group*, and its fate should be the same.

## IV.    Nada's RICO Claims Are Barred By The Statute Of Limitations.

Nada's RICO claims are barred by RICO's four-year statute of limitations, and his attempt to invoke fraudulent concealment falls short.  *See Feld*, 873 F. Supp. 2d at 308.  Nada discovered his injury by April 2019, when Lord Energy was allegedly "over-indebted by about $80 million," "dissolved its U.S. subsidiary," and "filed for bankruptcy protection."  Am. Compl. ¶¶ 211, 213; *see id.* ¶ 158.  So the statute of limitations on Nada's RICO claims ran out in April 2023 at the latest.  Yet Nada did not file his action until January 2024, after the statute of limitations had lapsed.

In an attempt to escape this straightforward conclusion, Nada contends that the limitations period should be equitably tolled under the doctrine of fraudulent concealment.  Opp. 60–62. Under that doctrine, a statute of limitations is tolled only if "(1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quotation omitted).  In a case alleging fraud, "the plaintiff must show that the defendant engaged in an act of concealment separate from the wrong itself."  *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996).

Importantly, "the doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1494 (D.C. Cir. 1989) (quotation omitted).

Nada cannot make out a showing of fraudulent concealment because he does not allege the affirmative conduct necessary to toll the statute of limitations. And even if he could, fraudulent concealment does not toll the limitations period because Nada had actual notice of the claim.

### A. Nada does not allege the affirmative conduct necessary to toll RICO's statute of limitations for fraudulent concealment.

None of the conduct that Nada points to is the type of affirmative conduct required to establish fraudulent concealment. A plaintiff alleging fraudulent concealment must show "an affirmative act of concealment—in other words, some misleading, deceptive, or otherwise contrived action to conceal information material to [his] claim." *Williams v. Conner*, 522 F. Supp. 2d 92, 100 (D.D.C. 2007) (quotation omitted). The "defendant's silence is usually not enough" unless the plaintiff can point to "an affirmative duty on the part of the defendant to disclose relevant information." *Id.*; *see also Sprint*, 76 F.3d at 1226. Moreover, the fraudulent concealment "must actually succeed in precluding the plaintiff from acquiring knowledge of the material facts." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 988 (D.C. Cir. 2014). Thus, for conduct to constitute fraudulent concealment, it must be geared toward concealing the cause of action "from the plaintiff." *Richards v. Mileski*, 662 F.2d 65, 70 (D.C. Cir. 1981); *see also Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 143–44 (D.D.C. 2018).[4]

---

[4] *Richards* applied fraudulent concealment under District of Columbia law, which is identical to the federal fraudulent-concealment standard. *See Riddell*, 866 F.2d at 1491 ("The elements of fraudulent concealment are the same . . . in both federal and District of Columbia law.").

Most of Nada's allegations concern mere nondisclosure or silence by Defendants.  Nada relies on Alp's alleged communications with the UAE, which were "discreet" and "confidential," as well as confidentiality agreements allegedly signed among Defendants.  Opp. 60–61.  But that merely alleges that Defendants stayed silent about their internal communications with one another.  Likewise, Nada does not explain how the nondisclosure agreements were used to conceal the alleged conspiracy, and courts have rejected arguments that such agreements constitute *fraudulent* concealment.  *See Dummar v. Lummis*, 543 F.3d 614, 622 (10th Cir. 2008) ("[W]e fail to see what is fraudulent about . . . requiring employees to sign nondisclosure agreements.").  And the use of encrypted messages and referring to one another as "my friend," Opp. 61, is similarly irrelevant.  There is nothing fraudulent about this conduct; "mere concealment is not fraudulent concealment[.]"  *Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005).

Moreover, none of Nada's allegations show that Defendants concealed their identity *from Nada*.  These allegations describe how Defendants dealt with one another.  Nada does not claim that he would have discovered Defendants' identities earlier had they not allegedly signed nondisclosure agreements, used end-to-end encryption, or called each other "friend."  These were not communications or documents meant for Nada to receive.  Likewise, the alleged pseudonyms used, Opp. 60–61, were not directed toward Nada, nor did they prevent Nada from learning he had a cause of action or any material fact.  Two of the pseudonyms were allegedly used by journalists to publish articles under another name.  *See id.* at 61; Am. Compl. ¶¶ 149, 177–80.  But these journalists' decisions to publish articles under pseudonyms does not show that Defendants hid their identities from Nada.  Indeed, Nada knew about the identities of other journalists (including Besson).  *See, e.g.*, Am. Compl. ¶¶ 21, 43.  The other pseudonym involved emails allegedly sent from Alp to Crédit Suisse and certain financing watchlists.  *See id.* ¶¶ 152–53.  But again, none of

these emails were directed to Nada, and there are no allegations that had a pseudonym not been used, Nada would have uncovered any material information earlier. World-Check, for example, refused to turn over information when Nada emailed the watchlist in July 2018—that decision, and not the pseudonym, "stymied [Nada's] efforts to identify his unknown defamers[.]" *Id.* ¶ 157.

### B.  Nada's actual notice defeats his fraudulent-concealment theory.

Because Nada had actual notice of the potential claims, he cannot invoke the doctrine of fraudulent concealment even if it were supported by the allegations in the Amended Complaint. As noted, the doctrine does not come into play "if a plaintiff is on notice of a potential claim" despite attempts at concealment. *Riddell*, 866 F.2d at 1494 (quotation omitted). The limitations period "will only be tolled if the defendants' acts in concealing the fraud prevented" the plaintiff "from discovering that it had been injured by the alleged conspiracy." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 9 (D.D.C. 2007). And "[n]either a lack of knowledge of the specific pattern of fraudulent activity, or an inability to know the particular identities of some of the perpetrators of the fraud alters this result." *Id.*; *see Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7, 17 (D.D.C. 2000) ("Even if plaintiffs were able to point to facts in dispute regarding the allegations of fraudulent concealment . . . knowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running[.]").

Nada knew about his "injury" and its "cause," as well as the identities of some of the Defendants, more than four years before filing this lawsuit. By April 2019, Nada knew of his injuries: "Lord Energy was forced to declare bankruptcy," and Americas Lord Energy had been dissolved a month earlier. Am. Compl. ¶¶ 25, 27. Nada concedes that by July 2018, he "knew he was the victim of a concerted effort to smear his name by falsely linking him and his company to terrorism." *Id.* ¶ 158. By then, Nada was aware of articles written about him, the platforms that published them, and the alleged authors, including Besson. *See id.* ¶¶ 113, 119, 124, 142–49, 164,

171–77.  And Nada concedes that "[i]n spring and summer 2018," he "retained the U.K. law firm Carter-Ruck" and contacted many of the entities that he now claims spread the harmful statements. *Id.* ¶ 159.  Nada was thus on actual notice that he had a legal claim by April 2019, if not earlier. Indeed, in June 2018, he "edit[ed] the Wikipedia page" reflecting the supposedly false information by "adding a section explaining that Lord Energy is pursuing legal against the various media outlets responsible for publishing false claims about him." *Id.* ¶ 164.  And he informed a Wikipedia editor that he had "engaged a defamation law firm" to "bring legal action." *Id.* ¶ 165.

Nada attempts to downplay his knowledge by arguing that he "could not successfully ascertain" the "scope of the campaign against [him]" until "April 2021, when the hacked documents revealed the nature of the enterprise." Opp. 61.  This misses the point.  As this Court has recognized, "in the case of a civil conspiracy it has been held to be irrelevant to the running of the statute of limitations that the plaintiff did not know of a formal agreement among the parties when the plaintiff did know that the acts of the defendants were causing injury and believed these acts to be illegal." *Fitzgerald v. Seamans*, 384 F. Supp. 688, 694 (D.D.C. 1974).  Neither the "lack of knowledge of the specific pattern of fraudulent activity," nor "an inability to know the particular identities of some of the perpetrators of the fraud," tolls the statute.  *Miller*, 505 F. Supp. 2d at 9.

## CONCLUSION

Because Nada once again has not, and cannot, overcome the First Amendment's protections for Dr. Vidino's protected speech and petitioning activities or state a plausible RICO conspiracy claim against him, this Court should dismiss Dr. Vidino from this action with prejudice.

Dated:  November 8, 2024

Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill (D.C. Bar #481430)
Nathaniel J. Tisa (D.C. Bar #90006243)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
T: (202) 887-3680
F: (202) 530-9662
mmcgill@gibsondunn.com
ntisa@gibsondunn.com

*Counsel for Lorenzo Vidino*