UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAZIM NADA and LORD ENERGY SA, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED ARAB EMIRATES, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-00206-ABJ |

**RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully submit the following response to Defendants' Notice of Supplemental Authority.  (ECF No. 106.)  Unlike in *Hafez v. Vidino*, No. 1:24-cv-00873-AHA, 2025 WL 2800719 (D.D.C Sept. 30, 2025), here Plaintiffs allege that Defendants conducted a ferocious, organized smear campaign in which they made dozens of false and misleading statements on U.S.-based platforms or directed at domestic audiences to discredit Plaintiffs and bankrupt their businesses.  Defendants intended to, and did, destroy Plaintiffs' U.S. subsidiary and disrupt their relationships and dealings with U.S.-owned companies.  Specifically, *Hafez* is distinguishable from the present case for at least three reasons.

*First*, with respect to personal jurisdiction over the foreign defendants, Plaintiffs allege that Defendants purposefully directed their activities at the United States, and Defendants' U.S.-directed activities caused Plaintiffs to suffer domestic injuries.  The Court in *Hafez* held that it lacked personal jurisdiction over the foreign defendants because the Hafez failed to allege that the "defendants purposefully directed activities at the United States that injured Hafez." *Hafez*, 2025 WL 2800719, at *4.  Notably, the Court acknowledged that Hafez "[did] allege these defendants took some actions directed toward the United States—they planned to publish articles in publications in the United States, like the Daily Kos and Medium, create 'negative pages on

Wikipedia, a U.S.-based company,' and manipulate 'results on U.S.-based search engines like Google, Yahoo!, and Bing.'" *Id*. However, Hafez failed to "***provide details about the articles he refer[red] to***," including whether they were actually published. *Id.* (emphasis added).

Here, by contrast, Plaintiffs identify with particularity how Defendants specifically directed their false and fraudulent communications to U.S. journalists, bank compliance monitors, Wikipedia, and other websites hosted on servers in the United States for the express purpose of harming a U.S. citizen's business and reputation, including by destroying his U.S. subsidiary. (Am. Compl. ¶¶ 88, 135–57, 171–80, 189–95, 200–19, ECF No. 76.) ***Those statements published on U.S. platforms and directed to U.S. audiences were the most damaging and effective in harming Plaintiffs.*** Defendants also hired a U.S. investigative firm to gather intelligence on Plaintiffs' U.S. subsidiary. (*Id.* ¶ 269.) And they conspired with Lorenzo Vidino—a prominent academic at the George Washington University—to carry out their unlawful scheme. (*Id.* ¶¶ 40, 126.) Because of Defendants' actions, World-Check, a bank compliance platform owned by Thomson Reuters with offices throughout the United States, blacklisted Plaintiffs as terrorists. (*Id.* ¶¶ 22, 153–55, 190.) Defendants also directed their false and fraudulent statements to Plaintiffs' business partners, including U.S.-headquartered companies like CCI, Exxon Mobile, and more. (*Id*. ¶¶ 201–203.) Because of Defendants' actions, those U.S. companies stopped doing business with Plaintiffs. (*Id*.) Plaintiffs detail specific actions by Defendants purposefully directed at the United States, which were essential to their fraudulent scheme that bankrupted a U.S. company and caused substantial economic and other harm to a U.S. citizen.

*Second*, *Hafez* does not support dismissal of Plaintiffs' RICO claims for similar reasons. In *Hafez*, the court held that the plaintiff failed to state a claim under RICO because he failed "to specifically allege harms to his business or property that arose in the United States" and thus failed

to meet the threshold element of "domestic injury to business or property." *Hafez*, 2025 WL 2800719 at *5. As discussed, Plaintiffs' Amended Complaint is replete with examples of harm that arose in the United States, including the destruction of Plaintiffs' U.S. subsidiary. (*E.g.*, Am. Compl. ¶¶ 10, 57, 88, 212–13, 219, 226.) Plaintiffs also allege with particularity that Defendants sent, through interstate wires, dozens of fraudulent emails and published numerous articles, blog posts, and Wikipedia entries making the false claims that Plaintiffs were linked to the Muslim Brotherhood and terrorism. (*Id.* ¶¶ 11–14, 18, 98, 101–02, 110–12, 141–43, 150, 162, 166–67, 172–85, 290–91, 310–12.) *Many of the emails were directed at U.S. recipients and most of the articles and blog posts were published on U.S. platforms*. (*Id.* ¶ 21.)

*Third*, the Court in *Hafez* found that "the core of Hafez's injuries [was] reputational" and held that was insufficient to support a RICO claim. *Hafez*, 2025 WL 2800719 at *5. Here, Plaintiffs allege that Defendants specifically intended to deprive Plaintiffs of money and property. For example, Plaintiffs allege that Defendants sought to, and did, block Plaintiffs' "bank accounts and business" by "[d]iscreetly notify[ing] banks of" Plaintiffs' supposed "links to terrorism and Political Exposed Persons." (*Id*. ¶¶ 18, 141.) Likewise, Defendants stated "'objective [was] to paralyze' Lord Energy." (*Id.* ¶¶ 162, 167.) Thus, Plaintiffs identify with particularity dozens of predicate acts directed at the United States that directly caused domestic injury to Plaintiffs' business, readily distinguishing this case from *Hafez*.

Dated: November 3, 2025

Respectfully Submitted,

/s/ *Thomas A. Clare, P.C.*

Thomas A. Clare, P.C.
Nicholas J. Brechbill
Eric D. Hageman
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: nick@clarelocke.com
Email: eric.hageman@clarelocke.com

*Attorneys for Plaintiffs*